# Niagara Ins. Co. v. Bishop.

1. *Insurance—Appraisement Clause—Condition Precedent.*—Where an appraisal clause in a contract of insurance provided that in the event of a disagreement as to the amount of loss between the insurer and the insured, the loss should be ascertained by two disinterested appraisers, the insured and the company each selecting one, who were first to select an umpire, with power to decide any difference between them, *it was held* that the provision was legal and that a compliance therewith was a condition precedent to the bringing of the suit to recover damages for a loss under the policy.

2. *Insurance—Sixty Days Limitation.*—A clause in a policy of insurance, providing that no loss shall become payable until sixty days after the making of the appraiser's award, where an appraisal is required under the terms of the policy, is a legal limitation, and a compliance therewith is a condition precedent to the bringing of the suit upon the policy.

Niagara Ins. Co. v. Bishop.

3. *Insurance—Responsibility for Neglect of Appraisers.*—Where, under a policy of insurance containing a provision that in the event of a disagreement as to the amount of the loss, it should be ascertained by two disinterested appraisers, and a loss occurring, the parties being unable to agree, each selected an appraiser under the conditions of the policy to make an estimate for them, who entered upon the discharge of their duties, but were unable to agree, and having failed to appoint an umpire, the proceedings were abandoned, *it was held* that the responsibility of the case was upon the party represented by the appraiser who neglected his duty.

4. *Insurance—Duty of Appraisers under the Policy.*—Where a policy of insurance contained a clause that in the event of a disagreement as to the amount of loss, the amount should be ascertained by two disinterested appraisers, as a condition precedent to bringing a suit upon the policy, the appraisers, when appointed, stand for the parties appointing them; if either improperly neglects his duty, the party appointing him is responsible for such neglect. If either insists upon unreasonable requirements which have the effect to defeat the appraisal, his principal is responsible therefor; and in case the appraiser representing the insurance company acts in such bad faith as to prevent an accomplishment of the appraisal within a reasonable time, the insured is absolved from further compliance with the provisions of the policy and may bring his suit for the loss at once.

5. *Practice.—Admission of Evidence in Trials by the Court.*—Less importance is attached to the improper admission of evidence when the cause is tried by the court. In such cases it is usual to receive matters offered in proof more freely than in cases of the trial before a jury. .

**Memorandum.**—Action on policy of insurance. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the May term, A. D. 1893, and affirmed. Opinion filed December 12, 1893.

APPELLANT's BRIEF, PADEN & GRIDLEY, ATTORNEYS, GEORGE L. PADDOCK, OF COUNSEL.

"While, however, it is perfectly well settled that any agreement that contemplates the exclusion of an aggrieved party from a suit at law is invalid, there seems to be no doubt that any agreement as to the mode of adjustment or of settling the amount of loss, or the time for paying it, or any particulars of that nature which do not go to the root of the action, but are preliminary in aid thereof, as, for instance, an agreement that at the trial of an action it shall not be lawful for either party to enter into the question of

the amount of the loss, but that it shall always be settled by
reference, and that the only question to be tried at law shall
be the right to recover, is valid. A distinction is made be-
tween an agreement to refer every matter in dispute to
arbitration and one to pay such a sum as the damage shall
be found by a third party to amount to, which latter oper-
ates to reduce the policy from a contract to pay the amount
of damage absolutely, and to substitute the arbitrator for
the jury to ascertain its amount." May on Insurance, Sec.
493. See, also, Ostrander on Law of Fire Insurance, 214.
Burch on Fire Insurance Contract, 318; Wood on Fire In-
surance.

"Such a stipulation, not ousting the jurisdiction of the
courts, but leaving the general question of liability to be
judicially determined, and simply providing a reasonable
method of estimating and ascertaining the amount of the
loss, is unquestionably valid, according to the uniform cur-
rent of authority in England and in this country. Scott v.
Avery, 5 H. L. Cas. 811; Viney v. Bignold, L. R. 20, Q. B.
Div. 172; Delaware & H. Canal Co. v. Pennsylvania Coal
Co., 50 N. Y. 250; Reed v. Washington F. & M. Ins. Co.,
138 Mass. 572, 576; Wolf v. Liverpool & London & G. Ins.
Co., 50 N. J. L. 453; Hall v. Norwalk Fire Ins. Co., 57
Conn. 105, 114. The case comes within the general rule
long ago laid down by this court: 'Where the parties in
their contract fix on a certain mode by which the amount
to be paid shall be ascertained, as in the present case, the
party that seeks an enforcement of the agreement must
show that he has done everything on his part which could
be done to carry it into effect.

He can not compel the payment of the amount claimed,
unless he shall procure the kind of evidence required by the
contract, or show that by time or accident he is unable to
do so. United States v. Robeson, 9 Pet. 319.'" Hamilton
v. Liverpool & L. & G. Ins. Co., 136 U. S. 242; Martinsburg
& P. R. Co. v. March, 114 U. S. 549.

"A general provision that all disputes which may arise
in the execution of a contract shall be decided by arbitra-

tors, will not be allowed to deprive the courts of their jurisdiction, but the parties to a contract may fix on any mode they may think fit to liquidate damages, in their own nature unliquidated, and in such case no recovery can be had until the prescribed method has been pursued, or some valid excuse exists for not pursuing it." Old Saucelito Land and Dry Dock Co. v. Commercial Union Assurance Co., 66 Cal. 253.

"When it is agreed that no suit shall be maintained until an award has been had, fixing the amount of the claim, the agreement will be respected by the courts." Adams v. Insurance Co., 70 Cal. 198; Carroll v. Girard Fire Ins. Co., 72 Cal. 297.

If defendant refused compliance, then suit could be brought against it immediately. We hold the agreement reasonable and legal. It is sustained by the clear weight of authority." Canal Co. v. Coal Co., 50 N. Y. 252; Insurance Co. v. Wolff (N. J.), 14 Atl. Rep. 561; Dry Dock Co. v. Union Assurance Co., 66 Cal. 253; Davenport v. Insurance Co., 10 Daly, 535; Gauche v. Insurance Co., 4 Woods, 102; Carroll v. Insurance Co., 13 Pac. Rep. 865; Holmes v. Richet, 56 Cal. 307; Scott v. Avery, 8 Welsb. H. & G. 487; Insurance Co. v. Creighton, 51 Ga. 95; U. S. v. Robeson, 9 Pet. 319; Lovejoy v. Insurance Co., 11 Ins. Law J. 186; Wood Ins., Sec. 493; Gasser v. Sun Fire Office (Minn.), 44 N. W. Rep. 252.

"The arbitration clause was a barrier to recovery at law, without proving a demand for arbitration by the insured, and a refusal or neglect, or an express waiver." Flaherty v. Germania Ins. Co., 1 W. N. C. 352 (Pa.)

"The condition of the policy relating to the ascertainment of the amount of loss or damage is, unless waived, a condition precedent to the right of plaintiff to recover." Eichner v. L. & L. & G. Ins. Co., 9 N. Y. Sup. 954; see also Scottish Union & Natl. Ins. Co. v. Clancy, 8 S. W. Rep. (Texas) 630; Smith v. Briggs, 3 Denio 73; McMahon v. N. Y. & Erie R. R. Co., 20 N. Y. 463; Herrick v. Belknap, 27 Vt. 673; Strong on Eq. Jur., Sec. 1457a; Scott v. Corporation of Liverpool, 3 De Gex & J. 344; Brown v. Overbury,

11 Exch. 715; Tridman v. Holman, 1 Hurls. & Colt. 72; Braunstein v. Accidental Death Ins. Co., 1 Best & Smith, 101; Mosness v. German Am. Ins. Co., 52 N. W. Rep. (Minn.) 932; Gasser v. Sun Fire Office, 42 Minn. 315; Pioneer Mfg. Co. v. Phoenix Ins. Co., 106 N. C. 28; Wolff v. L. & L. & G. Ins. Co., 50 N. J. 453; Scott v. Avery, 20 Eng. L. & Eq. Rep. 334; Gorman v. Hand in Hand Ins. Co., Irish Rep. 11 C. L. 224; Elliott v. Royal Exchange Assurance Co., L. R. 2 Ex. (Eng.) 237; Viney v. Bignold, L. R., 20 Q. B. Div. (Eng.) 172; Lantalum v. Anchor Marine Ins. Co., 22 N. B. R. 14; The President et al. v. The Pennsylvania Coal Co., 50 N. Y. 250; United States v. Robeson, 9 Pet. 327.

Appellee's Brief, Botsford & Wayne, Attorneys, Charles Wheaton, of Counsel.

"It can not avail either party that an umpire was not chosen before proceeding with the appraisal. The umpire here can act only after disagreement of the arbitrators. Until then an umpire is unnecessary. He can act as well and with the same effect if appointed when such controversy occurs. The time, therefore, fixed in the contract, is not essential or material." Chandos v. American Ins. Co., 54 N. W. Rep. 390.

The time when an act is to be done, either by contract or law, is not essential when it may be done as well later. Hall v. Delaplaine, 5 Wis. 206; McCullough v. Phoenix Ins. Co. (Mo.), 21 S. W. Rep. 207.

Justice and fair dealing did not require the plaintiffs to wait longer than they did before instituting their suit. Bishop v. Insurance Co., 130 N. Y. 488, 29 N. E. Rep. 844; Uhrig v. Insurance Co., 101 N. Y. 362, 4 N. E. Rep. 745.

"Under the arbitration clause it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith, so as to defeat the real object of the clause, it absolved the other party from compliance therewith; and

if either party refused to go on with the arbitration, or to complete it, or to procure the appointment of an umpire, so that there would be an agreement upon an appraisal, the other party was absolved. A claimant under such a policy can not be tied up forever, without his fault and against his will, by an ineffectual arbitration. Uhrig v. Ins. Co., 101 N. Y. 362.

## STATEMENT OF FACTS BY THE COURT.

On the 4th of January, 1891, appellant issued a policy of insurance to appellee insuring him against loss by fire to his ice house building on the bank of Fox River, near Elgin, until the 4th of July, 1892, to the amount of $1,000. The policy contained the following provisions:

" This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; such ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers as hereinafter provided. * * *

In the event of a disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their difference to the umpire, and the award in writing of any two shall determine the amount of such loss. * * * This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof, by any requirement, act or proceeding on its part, relating to the appraisal or any examination herein provided for; and the loss shall not become payable until

sixty days after notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers where appraisal has been required. * * * No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements nor unless commenced within twelve months after the fire."

The property was entirely consumed by fire on the 8th of February, 1892. Appellee at once notified the company's general agent and adjuster at Chicago, Mr. Hugh Martin, who visited the ruins, and with appellee endeavored to make an estimate of the loss. Considerable time was consumed by the parties in trying to effect a settlement, but they were unable to agree. Appellee then made proofs of loss and demanded the appointment of appraisers under the terms of the policy.

On the 10th of June, 1892, appellant appointed one John H. Doulin, of Chicago, appraiser in its behalf and notified appellee. Appellee selected one, Smith Hoag, of Elgin, appraiser in his behalf. The appraisers, without first selecting an umpire, as the policy provided, visited the ground and began an estimate of cost of material and construction. They differed widely, and after a few days Doulin returned to Chicago without agreeing upon an estimate. After it became evident that the appraisers could not agree, the appointment of an umpire was discussed, but none was elected, for the reason that they would not agree upon the locality from which he should be selected.

On the 10th of August, 1892, appellee brought suit upon the policy. In addition to other pleas, the company pleaded specially the inability of the parties to agree, the appointment of appraisers, and that the appraisal was still pending and undetermined. Appellee replied that the company had refused without good and sufficient cause to complete the appraisal, and that none was pending. The case was tried by the court without a jury. The court found the issue for appellee, and returned judgment in his favor and against the

company for $910.71. The company appealed, and now asks a reversal because of improper rulings upon questions of evidence, refusal to hold propositions of law asked, that the verdict is contrary to the law and evidence, and that the verdict is excessive.

OPINION OF THE COURT, HARKER, P. J.

The main question involved in this controversy, is the one raised by the special pleas, that the action was commenced before the appraisal undertaken by appraisers appointed was completed, and while such appraisal was pending, and the special replication that the completion of the appraisal was defeated by the delay and unfair action of the company and its refusal without sufficient cause to complete the same.

The appraisal clause in the contract of insurance provided that in the event of a disagreement as to the amount of loss between the insured and the insurer, the loss should be ascertained by two disinterested appraisers, the insured and the company each selecting one, who were to first select an umpire, with power to decide any difference between them. Another clause provided that no loss should become payable until sixty days after the making of the appraisers' award where an appraisal had been required. That such provisions are legal, and that a compliance therewith is a condition precedent to the bringing of suit, is held by a long and unbroken line of decisions in this country. May on Insurance, Sec. 493; Wood on Insurance, 493; Johnson et al. v. Humboldt Ins. Co., 91 Ill. 92; Hamilton v. Liverpool & L. & F. Ins. Co., 136 U. S. 242; Adams v. Ins. Co., 70 Cal. 198; Reed v. Washington Ins. Co., 138 Mich. 572; Wolf v. Liverpool & L. G. Ins. Co., 50 N. J. 453; Davenport v. Ins. Co., 10 Daly 355.

We do not care to express any opinion as to the conduct of either appellee or the adjuster in their efforts to agree upon an estimate, a matter discussed with great freedom by counsel. It is sufficient to say they were unable to agree and that each selected an appraiser to make an estimate

for them, and that the appraisers entered upon a discharge of the office to which they had been nominated.

As we view the case the only question of importance is, which of these appraisers is responsible for the suspension of their work and the failure to complete the appraisal? When appointed they stood for the parties appointing them. Hoag for Bishop and Doulin for the company. If either improperly neglected his duty, the party appointing him was responsible for such neglect. If either insisted upon an unreasonable requirement which had the effect to defeat an appraisal his principal was responsible therefor. If either refused to go on with the work, or acted in such bad faith as to prevent the accomplishment of the appraisement within a reasonable time, the principal of the other appraiser was absolved from further compliance with that provision of the policy. In that case, it must be said, the proceedings for appraisal were not pending but had been abandoned.

It is, perhaps, unfortunate that Doulin and Hoag did not at the outset select an umpire. They labored for two days trying to make an estimate without, but were so widely apart on the different items of construction that no agreement was reached. Doulin then returned to his home, insisting that it would be necessary to call in a third man. Instead of returning to Elgin and making further effort toward an appraisement, he wrote to Hoag in a few days proposing payment of a certain sum for the loss, which Hoag declined as unreasonable and unjust. Hoag wrote asking him to return, expressing the opinion that they could, after going through the entire estimate, reach an agreement.

An umpire was not selected then because Hoag urged the appointment of a man from Elgin, or the county in which the ice-house was located, while Doulin urged the appointment of a man from Chicago, Bloomington, or elsewhere out of the county. Hoag objected to the men proposed by Doulin, because they were from a distance and he knew nothing of their fitness for the place. Doulin objected to the men proposed by Hoag, as they were local builders and Hoag knew them. One of them lived at Aurora,

one at Elgin, one at Dundee and others at Elgin.   We see
nothing unreasonable in the contention of Hoag, that the
umpire should be selected from Elgin or elsewhere in the
county.   It does not appear that either of the individuals
proposed by him was an unfair man, or one over whom
either he or Bishop had any undue influence.   Indeed, it
seems to us that a capable, honest and disinterested man re-
siding in the county where the loss occurred, would, by reason
of his acquaintance with the value of labor and material
there, be preferable to one selected from a distance.   Dou-
lin made no objection to any man proposed by Hoag because
of incompetency or unfairness.   Under the circumstances, it
would be unjust to allow the technical defense interposed to
prevail.

We prefer, instead, to hold that the proceedings for
appraisal were abandoned and that the abandonment was
attributable to the conduct of appellant's appraiser.

The above views dispose of the contention that the court
erred in overruling the motion made at the close of plaint-
iff's testimony to find in favor of the defendant.

We attach but little importance to the contention that the
court admitted improper evidence for the plaintiff and ex-
cluded proper evidence offered by the defendant.   The case
was tried by the court, who, as is usually the case, received.
matters offered in proof more freely than he would have
done had the case been tried by a jury; but it does not ap-
pear that the defendant was prejudiced thereby.   The price
list of lumber offered was properly refused.

A careful examination of the evidence satisfies us that the
damages allowed by the court were not excessive.

We do not care to enter upon a discussion of the proposi-
tions of law submitted and refused.   Our views upon some
of them sufficiently appear in the discussion of the main
point of contention above set forth.   Some of them were
proper and could have been given, but we are so clearly of
the opinion that substantial justice has been done by the
finding and judgment of the Circuit Court that we shall not
reverse because propositions were refused that should have
been given.   Judgment affirmed.