FIRE ASSOCIATION OF PHILADELPHIA V. HARRY APPEL,
ADMINISTRATOR.

1. If a stipulation in an insurance policy relating to incidental'
   matters and not connected with the fundamental right of action.
   becomes impossible as a result of causes not anticipated by
   the parties, the condition is discharged, and performance in
   that regard can not be required of the insured.
2. Where under a fire insurance policy containing a stipulation for·
   an arbitration in case of a disagreement as to a loss, referees
   and an umpire were appointed, and after the appraisal was.
   partially made, the referee of the insurer declined to act fur-
   ther, and the insurer refused to appoint another referee in his
   place, but insisted upon a new appraisal, such facts will operate·
   as an abandonment on the part of the company of their right
   to an appraisal under the policy, and no objection, therefore,
   to the proof of loss as being unaccompanied by an award can.
   be heard.

HOSEA, J.; HOFFHEIMER and LITTLEFORD, JJ., concur.

Error to special term.

This is one of a series of cases upon similar policies,
brought in the court below against various insurance com-
panies, and by consent tried as one.

The Fire Association of Philadelphia, plaintiff in error·
herein, and defendant below, together with the other insur-
ance companies similarly situated, issued their respective·
policies of insurance to defendant-in-error's decedent, in-
suring her against loss and damage to her stock of milli-
nery, etc., located in a building occupied by her in Cincin--
nati, Ohio. All the policies were of the New York stand--
ard form.

A fire occurred in said building on September 9, 1901,.
and the assured and the companies entered into an adjust-
ment of the loss. A difference arose and an appraisement
was demanded by the companies under the terms of their·
policies and an agreement of submission duly entered into,.
and appraisers were duly selected by insurer and insured.

The appraisers selected an umpire and duly proceeded upon the determination of the sound value and loss under said submission, as provided in the policy; but after determining regularly as to about half of the stock (in value), the appraiser selected by the companies abandoned his duties and refused to resume, although requested to do so both by the plaintiff's decedent and the companies. There is no direct evidence of bad faith on the part of either appraisers or on the part of either of the companies or the assured, otherwise.

Upon the refusal of the appraiser selected by the insurers to continue to act, notice was given the companies and a request made of the companies to appoint another appraiser in his stead; but they insisted that they were entitled to an award under the original submission with both appraisers named in the same acting, or else to an entirely new appraisement with other appraisers to be selected by the parties. The assured declined to enter into a second submission.

Thereupon the appraiser for the assured and the umpire completed the estimate of the sound value and loss and returned same as an award, finding a sound value of $11,491.97 and a loss of $9,725.08.

Thereupon also the assured served "proofs of loss" on the companies, which were refused as not including a legal "award" by appraisers.

The insured having died, plaintiff, as her duly qualified administrator, brought suit upon the policies. His petition alleged performance of all the conditions of the policy "except such as were waived by this defendant as hereinafter stated," followed by an allegation of the facts above stated, and claiming that the action of the appraiser selected by the companies in refusing to complete the appraisement was by instruction of the companies.

The defendants filed answer admitting the submission, the terms of the policy bearing on the same, the refusal of one of the appraisers to complete the appraisement, and denying generally the other allegations of the petition, and alleging breach of the appraisement clause.

The cases were tried under stipulation on these issues before Hon. Rufus B. Smith (a jury having been waived). Before a decision was rendered, Judge Smith retired from the bench and the cause was submitted to him as referee on the testimony taken before him while on the bench.

The referee reported findings of fact and law, to the latter of which the companies duly excepted, as also to his overruling the motions for a new trial. The report was duly confirmed at special term and judgments entered thereon against the defendants. The defendants filed motions to set aside these judgments and for a new trial, which were overruled and exceptions duly taken.

No exceptions being taken to the findings of fact, the errors alleged as the grounds of these proceedings are in the conclusions of law found by the referee and sustained by the court, as follows: ·

(a)   That upon the refusal of the appraiser selected by the companies to complete the appraisal and the refusal of the companies to appoint another in his place to complete it, the companies abandoned their right to an appraisement under the policy.

(b)   That the appraisers selected by the assured and the umpire were justified in completing the appraisement without the assistance of the appraiser selected by the companies as was done.

(c)   That the companies were not entitled to a "new appraisement," and therefore their objections to the proofs of loss were not well taken.

The legal difficulties created by the failure of the appraiser selected by the insurance companies to complete the work of appraisement are resolvable upon elemental principles, as we think, by bringing into clear view at the outset the fact that the stipulation of the insurance contract here in question is one relating to a mere detail of proof as to the amount to be recovered and does not touch the fundamental right of recovery. Our highest judicial tribunal has declared that the constitutional right to appeal to the courts for a redress of wrongs is "inalienable and can not

be thrown off or bargained away." *Balt. & O. Ry.* v. *Stankard,* 56 Ohio St., 224; *Myers* v. *Jenkins,* 63 Ohio St., 101, 119.

This principle applies to stipulations of this nature in insurance contracts, which are upheld solely upon the ground that they prescribe only a mode of determining the loss and do not go to the right of action generally. *The Excelsior,* 123 U. S., 40, 49 (8 Sup. Ct. Rep., 33; 31 L. Ed., 75); *Hamilton* v. *Insurance Co.,* 6 O. F. D., 587 (136 U. S., 242, 255; 10 Sup. Ct. Rep., 945; 34 L. Ed., 419; *Phoenix Ins. Co.* v. *Carnahan,* 63 Ohio St., 258, 268.

In contracts involving stipulations of performance, it is important, in determining the facts under the rule of substantial performance, to consider whether those things in which the plaintiff may fall short of strict and literal performance are vital and affect fundamental rights, or are incidental matters as to which legal excuse for non-performance will suffice. If the failure is in respect of mere incidental things, the modern rule of laxity is applicable. *Kane* v. *Stone Co.,* 39 Ohio St., 1, 11.

Illustrations of this are not wanting in insurance cases. Thus it has been held that where the surrender of a policy is made a condition precedent of obtaining a paid-up policy, the fact that the original policy has been stolen or lost and can not be surrendered, will not defeat the right of the assured upon compliance with all the other conditions. *Wilcox* v. *Assurance Soc.,* 173 N. Y., 50 (65 N. E. Rep., 857; 90 Am. St. Rep., 579).

A similar holding as to the right to change a beneficiary, where the former beneficiary refused to deliver up the policy, will be found in *Lahey* v. *Lahey,* 174 N. Y., 146 (66 N. E. Rep., 670; 61 L. R. A., 791; 95 Am. St. Rep., 554).

The cases just cited apply to specified conditions of a contract the principle of discharge, by matter *in pais,* of a contract as an entirety, namely: That where performance is rendered impossible by events not fairly within the purview of the contract and that can not be assumed to have been within the contemplation of the parties, such event operates as a discharge. Page, Contracts, Section 1363;

*Stewart* v. *Stone,* 127 N. Y., 500 (28 N. E. Rep., 595; 14 L. R. A., 215).

In *Wilcox* v. *Assurance Soc., supra,* the contention of the insurance company was: That the insured, though unable to produce the original policy, could have delivered a receipt or release which would "constitute a sufficient surrender of the policy." But the court said:

"The condition does not, in terms, require anything of that kind. What it does require is the surrender of the identical policy, with a proper receipt endorsed thereon. All agree that compliance with this condition became impossible," and the judgment of the lower court was therefore reversed and the cause retained.

This, as will be seen, is tantamount to saying that where a contract stipulation touching incidental matters and not connected with the fundamental right of action, becomes impossible by causes not anticipated by the parties, the condition is discharged, and becomes *non est,* and the insured is legally excused from performance in that regard.

The facts of the present case, under the contention of the companies that they acted in entire good faith in the selection of their appraiser and should not be bound by his default, seems to make the application of the principle above stated peculiarly appropriate and fitting. The provision for arbitration is one for the benefit of the companies, and was sought to be enforced by them. Appraisers were properly selected; these chose their umpire; and the appraising board duly organized proceeded in due form half way through their work. The stipulation of the policy made no provision for any other appraisement; and, having selected the appraisers in good faith, and these having duly organized, the power of the contracting parties in this regard was gone,—they were *functus officio.* The arbitrary withdrawal of an appraiser rendered that appraisement impossible, except by appointment of a new appraiser to act as a substitute. But this, although requested by the insured, was refused by the insurer.

Under some authorities a court would be justified in holding that a submission having been once entered into, it is

not in the power of one of the arbitrators to annul or avoid the agreement by deserting his trust (Morse, Arbitration, 156), and that, consequently, the award, as rendered by the two remaining appraisers, was a true and legal award and complied with the condition of the contract. But the better reasoning, we think, is that the appraisement contemplated by the contract having been rendered impossible by events beyond the control of either party, the condition of the contract in that regard was discharged.

For the reasons given and upon the authorities cited above, we prefer to rest our decision here upon the latter ground, noting, however, the refusal of the companies to accept a qualified performance by the insured party.

The referee held that the refusal of the insured to appoint a new appraiser to take the place of the one who abandoned his trust was, in effect, an abandonment of their right to an appraisement under the contract. We can not say that this is not a correct view, for it stands supported by good authority. A typical case of this character is that of *Bradshaw* v. *Insurance Co.*, 137 N. Y., 137 (32 N. E. Rep., 1055), cited by plaintiff in error, where, under a similar provision of the policy, an appraisement in due form was set aside upon the ground that the appraiser selected by the insurer showed, by his conduct, that he was biased and partial to an extent prejudicing the result. The court said that upon the evidence "a jury might say that he abandoned his duties as a disinterested appraiser." The reviewing court also upheld the trial court in refusing to charge that "the insurer was not bound by what its appraiser did or failed to do," because "the failure of defendant's appraiser to do his duty was not to be taken advantage of by the defendant."

The reasoning of the case seems to be grounded upon the maxim that a man shall not profit by his own wrong, and upon the theory that the appraiser is so far the representative of the party who selects him, as to involve a principle of responsibility analogous to agency. Such, in one form of expression or another, is the principle of many of the decisions on this question. *Uhrig* v. *Insurance Co.*, 101 N.

Y., 362 (4 N. E. Rep., 745) ; *Bishop* v. *Insurance Co.,* 130 N. Y., 488 (29 N. E. Rep., 844) ; *Brock* v. *Insurance Co.,* 102 Mich., 583 (61 N. W. Rep., 67; 26 L. R. A., 623; 47 Am. St. Rep., 562) ; *McCullough* v. *Insurance Co.,* 113 Mo., 606 (21 S. W. Rep., 207) ; *Read* v. *Insurance Co.,* 103 Iowa, 307 (72 N. W. Rep., 665; 64 Am. St. Rep., 180; *Niagara Ins. Co.* v. *Bishop,* 49 Ill. App., 388; *Niagara Fire Ins. Co.* v. *Bishop,* 154 Ill., 9 (39 N. E. Rep., 1102; 45 Am. St. Rep., 105) ; *Fisher* v. *Insurance Co.,* 95 Me., 486 (50 Atl. Rep., 282; 85 Am. St. Rep., 428).

But that a second appraisement can not be insisted on where the first fails through default of appraisers once properly selected is also held in many cases. See *Niagara Fire Ins. Co.* v. *Bishop, supra; Uhrig* v. *Insurance Co., supra; Western Assur. Co.* v. *Decker,* 98 Fed. Rep., 381 (39 C. C. A., 383) ; *Fisher* v. *Insurance Co., supra; Dun* v. *Insurance Co.,* 10 Dec., 667 (8 N. P., 612), affirmed by *Insurance Co.* v. *Dun,* 52 Ohio St., 639.

While in some of the cases the principle of localized responsibility seems to be more strongly suggested by a default aggravated by conduct, yet this can hardly be properly said to affect the question of agency. It would seem more logical to base the action of the courts in those cases upon the principle that where of two innocent persons one must suffer, it shall be he whose act or default brought into existence the conditions of and thus made possible the injury to the other.

But, the result being correct, whether the road to the right or to the left be taken in reaching it, is of secondary consequence, yet, except in cases where the act of the appraiser is such as to indicate culpable negligence in his selection, and thus justify a court in directly impugning the party concerned, it seems to us that the more satisfactory ground of decision is the discharge of the condition by unforeseen impossibility of performance. This view seems to be recognized with more or less distinctness in the following authorities in addition to those cited in the first instance: *Uhrig* v. *Insurance Co., supra; Brock* v. *Insurance Co., supra; McCullough* v. *Insurance Co., supra; Pretz-*

*felder* v. *Insurance Co.,* 116 N. C., 491 (21 S. E. Rep.,
302) ; *Howard Ins. Co.* v. *Hocking,* 115 Pa. St., 415, 416
(8 Atl. Rep., 592) ; *Niagara Ins. Co.* v. *Bishop,* 49 Ill. App.,
383, 396; *Western Assur. Co.* v. *Decker, supra.*

The objection to the proof of loss as being unaccompanied by an award, falls with the rest. The defendants repudiated the award as actually made, consequently theirs was but a reiterated demand for a new and independent appraisement, to which, as already shown, the contract did not entitle them. This would have been even more irregular, under the contract, than the substitution of a new appraiser under proceedings actually begun. To concede the principle of this demand would, as suggested by the referee, open a door to fraudulent repetitions, to the hardship and defeat of those insured. Under the basic principle we have adopted as controlling this case, no award was necessary, because the condition was rendered impossible of performance. The loss then became a fact to be proved like any other fact.

The plaintiff below seems to have proceeded in such wise as to be prepared to meet the issue under either of the theories we have indicated; but the insurance companies having refused to proceed under the appraisement originally begun, and having subsequently repudiated the award, as made—all upon the claim that the proceedings did not fulfill the terms of the policy—could hardly admit in more cogent terms the impossibility of performance by plaintiff, and they had no right to require a compliance with a substituted demand.

Whether these acts be construed as a waiver or abandonment of the condition, or as admissions of the impossibility of performance, is immaterial, since both lead to the same result, namely: They relieve the insured party from the necessity of performance of that condition; and the general performance which in other respects is conceded, must be accepted as a substantial performance of the contract as a whole.

We do not find in *Phoenix Ins. Co.* v. *Carnahan,* 63 Ohio St., 258, anything inconsistent with the view hereinbefore

expressed. In that case the insured ignored entirely the arbitration condition and refused, even when demanded by the insurer, to abide by it. The court very properly held that, since it was a condition of the policy, performance or a legal excuse for non-performance must be shown by the insured as a condition precedent to recovery, and that no legal excuse was shown.

There are, indeed, a few cases cited to us which hold that under certain circumstances it is incumbent on the insured to demand a new appointment of appraisers where the first arbitration fails, but those cases, when closely scanned, present some controlling fact such as the failure to select an umpire, etc., which clearly distinguish them as authorities. The clear weight of authority we find to be in favor of the general views we have stated; and the judgment of the court below is affirmed.

*J. H. Cabell* and *J. L. Kohl,* for plaintiff in error.
*John R. Sayler,* for defendant in error.