## HAMILTON v. LIVERPOOL, LONDON AND GLOBE INSURANCE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 326.	Argued May 2, 1890. — Decided May 19, 1890.

A condition in a policy of fire insurance, that any difference arising between the parties as to the amount of loss or damage of the property insured shall be submitted, at the written request of either party, to the appraisal of competent and impartial persons, whose award shall be conclusive as to the amount of loss or damage only, and shall not determine the question of the liability of the insurance company; that the company shall have the right to take the whole or any part of the property at its appraised value; and that, until such appraisal and award, no loss shall be payable or action maintainable; is valid. And if the company requests in writing that the loss or damage be submitted to appraisers in accordance with the condition, and the assured refuses to do so unless the company will consent in advance to define the legal powers and duties of the appraisers, and against the protest of the company asserts and exercises the right to sell the property before the completion of an award, he can maintain no action upon the policy.

The construction and effect of a correspondence in writing, depending in no degree upon oral testimony or extrinsic facts, is a matter of law, to be decided by the court.

THIS was an action upon a policy of insurance, numbered 2,907,224, against fire for a year from September 5, 1885, upon a stock of tobacco in the plaintiff's warehouse at 413 and 415 Madison Street in Covington in the State of Kentucky. Among the printed "conditions relating to the methods of adjustment of loss and the payment thereof," were the following: 

The tenth condition, after provisions relating to proofs of loss, certificate of a magistrate, submission to examination on oath, and production of books and vouchers and certified copies of lost bills and invoices, further provided: "When property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles

according to their kinds, separating the damaged from the undamaged; and shall cause an inventory to be made and furnished to the company of the whole, naming the quantity, quality and cost of each article. The amount of sound value and of the loss or damage shall be determined by agreement between the company and the assured; but if at any time differences shall arise as to the amount of any loss or damage, or as to any question, matter or thing concerning or arising out of this insurance, every such difference shall, at the written request of either party, be submitted, at equal expense of the parties, to competent and impartial persons, one to be chosen by each party, and the two so chosen shall select an umpire to act with them in case of their disagreement; and the award in writing of any two of them shall be binding and conclusive as to the amount of such loss or damage, or as to any question, matter or thing so submitted, but shall not decide the liability of this company; and until such proofs, declarations and certificates are produced, and examinations and appraisals permitted, the loss shall not be payable. There can be no abandonment to the company of the property insured, but the company reserve the right to take the whole or any part thereof at its appraised value."

By the eleventh condition, "it is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery, until after an award shall have been obtained fixing the amount of such claim in the manner above provided."

The answer put in issue the amount of loss; and set up that the plaintiff had not performed the conditions of the policy on his part; but had refused to submit a difference between the parties, as to the amount of loss, to appraisal and award as provided in the policy; and, against the defendant's protest, had sold the property insured, and deprived the defendant of its right under the policy to have an appraisal made and to take the property or any part thereof at its appraised value; and had thereby waived the right to recover under the policy.

At the trial, the plaintiff offered evidence tending to prove

the execution of the policy ; a loss by fire on April 16, 1886, occasioned by the tobacco becoming saturated and impregnated with smoke, and thereby greatly damaged ; and proofs of loss, in accordance with the policy. The only other evidence introduced was a correspondence between the parties at Cincinnati, the material parts of which were as follows :

April 23, 1886. Defendant to plaintiff. "If any claim for loss is to be made under policy No. 2,907,224 of this company, you will be expected to conform strictly to the conditions of said policy respecting the method of presenting claims for loss; and no conditions of the policy, or rights of the Liverpool and London and Globe Insurance Company thereunder, are in any manner waived or abandoned by that company. You will, of course, understand the necessity of not removing or disposing of any part of said stock, upon which loss is proposed to be claimed, pending the settlement of the claim, unless by agreement with the insurance companies."

April 24, 1886. Plaintiff to defendant. "It is necessary that I should have the room in which the property now is for the purpose of prosecuting my business. I propose to the company, furnishing it with the invoice of the cost or value of the property before the loss, to send the entire stock to be sold at auction." "If this is not assented to by the company, I shall be obliged to remove the property from my warehouse and put it in storage; and, in my judgment, the expense attending it and the disposition of it will considerably increase the amount of the loss. The property is ready for examination by your company. I desire that such examination as you wish to make shall be made at once, and that you will advise me forthwith whether you assent to the sale of the property by public auction in the manner proposed, as the fairest and most satisfactory mode of ascertaining its present value."

April 24, 1886. Defendant to plaintiff. "This company will be pleased to have your claim presented in due course and form, giving" (among other things) "the amount of loss or damage you claim on the whole, and also as against this

company, as it may be necessary to have the stock appraised by disinterested appraisers after receipt of proofs. We cannot consent to its removal, unless it be at your own expense. It should, if possible, be left where it is, though there can be no objection to your removing it to some other warehouse at your own expense, where it can be readily inspected by appraisers. We cannot consent to your disposal of it by sale. The matter of determining the value or damage will be one for mutual conference and agreement."

April 26, 1886. Plaintiff to defendant. "I inclose proof of loss under policy of your company, with invoice attached, in compliance with the requirements of the policy." "The property described and damaged has been invoiced and arranged, and is ready for examination by your company. Such examination must be made at once, for the reason that I am obliged to occupy the premises in the prosecution of my business, and each day of delay involves considerable loss and expense to me. As before advised, I propose to send the entire stock to be sold at public auction in a few days, whereof I will give you notice. It can be readily inspected in a short time where it now lies."

April 27, 1886. Defendant's agent to plaintiff. "I beg to acknowledge receipt of papers purporting to be proofs of loss under our policies 2,907,224 and 2,823,517. The same will have prompt examination and attention. Noting your purpose soon to sell the stock, permit us to say that we protest against such disposition of it at this stage, and against this *ex parte* way of determining the loss sustained. Conditions of our policy provide the manner and mode of determining the loss or damage; and we hereby formally demand an appraisal of the stock, as to value and damage, under each policy, each party to name a competent and disinterested party."

April 27, 1886. Plaintiff's counsel to defendant. "Mr. Hamilton is obliged, for the prosecution of his business, to remove at once the property covered by the insurance from his factory in which the property was insured." "I do not find any provision in your policy, restricting the assured, under such circumstances, from removing or selling the damaged

property. If you claim that any such provision has that force, I should be glad if you should at once call my attention to it." " The property covered by the policy above referred to. will require at least two weeks from this date to remove and bring to sale, and during that time it will be subject to whatever examination you may wish to make." " It does not occur to me that there can be any impediment in ascertaining the amount of the loss by an arbitration, in the manner ·provided by the policy, from the course which Mr. Hamilton indicates that he proposes to pursue."

April 28, 1886. Defendant to plaintiff's counsel. " It may be sufficient to point out that the appraisement provided by the terms of our policies, in the printed clause referred to, contemplates the possibility of the company exercising .the right therein reserved to take the property or any part thereof ' at its appraised value.' A sale of .the property prior to such appraisement would deprive the company of this right. We have refused and still refuse to consent to any disposition of the property, prior to the appraisement, or to any *ex parte* method of fixing the amount of the loss, which our policies· provide shall be determined ' by agreement between the company and the assured,' and by appraisement in case of difference. As to the removal of the property, your client. has stated that the loss would thereby be materially increased. You will understand, therefore, that such additional loss would necessarily be borne by him, and not by the company whose protest against such removal has been made. The proposed removal is expressly designed by Mr. Hamilton for his own advantage in the ordinary prosecution of his business, and the indemnity furnished by insurance does not extend to losses sustained in that direction. We protest against this removal, furthermore, because it takes away from the view of the appraisers the actual surroundings, location and condition of the property at the time difference of opinion arose, and would thus materially affect the judgment of the appraisers as to the loss sustained. We ask you for a direct answer to our request. for an appraisement, and desire that any further communica-. tion be directed to that point only.' You will please take

notice that any disposition of the property by sale prior to the appraisement will be understood and accepted by us as a refusal upon the part of your client to permit such appraisement and as a relinquishment of all claims under the policies of this company."

April 28, 1886.   Defendant and other insurance companies to plaintiff.   "The undersigned, representing the several insurance companies against which you have made claim for loss under their respective policies of insurance upon stock in your tobacco factory, Nos. 413 and 415 Madison Street, Covington, Ky., claimed to have been damaged by fire on April 16, 1886, beg leave jointly to take exception to the amount of claim made, and to demand that the question of the value of and the loss upon the stock be submitted to competent and disinterested persons, chosen as provided for in the several policies of insurance under which claim is made; and we hereby announce our readiness to proceed at once with this appraisement, so soon as your agreement to the demand is declared. We further desire jointly to protest against the removal, sale or other disposition of the property, until such an appraisement has been had, and to notify you that the insuring companies will in no way be bound by such *ex parte* action."

April 29, 1886.   Plaintiff's counsel to defendant and other insurance companies.   "Mr. Hamilton is not endeavoring to obtain any unfair advantage or unfair adjustment of his loss against the companies.   He has believed that, in view of the fact that the traffic in tobacco is so large in this city, and substantially all of it, at least ninety-nine per cent of the leaf-tobacco business, is transacted by sale at public auction, that a sale of this tobacco presented the fairest mode of ascertaining its actual value as it stands.   It is in substance and effect an appraisement in detail of every package by the entire trade in this city.   But in view of the fact that the insurers seem to demand arbitration by arbitrators, and that you propose to select a competent person, which we understand to mean a man acquainted with the manufacture of tobacco, to act as arbitrator in your behalf; Mr. Hamilton will accede to your proposition, upon the express understanding that the arbitra-

tors selected shall have a full opportunity to examine the stock of tobacco, and that it shall then be sold at public auction, in order that its value thus ascertained, together with such other evidence as either party may desire to offer, may be presented to the arbitrators before they make their award." "If the proposed arbitration is satisfactory, will you at once inform me of the arbitrator selected by you and submit to me the form of agreement of arbitration which you propose? Mr. Hamilton will do the like in respect to the arbitrator selected by him."

April 30, 1886. Defendant and other insurance companies to plaintiff's counsel. "We must insist upon arbitration, in accordance with the terms of our several contracts, without importing into it any conditions as to the sale of the property. Such conditions would be incompatible with the provisions of our several policies of insurance and the rights of the insuring companies thereunder. As soon as Mr. Hamilton indicates his readiness to proceed with the arbitration called for, we will submit the name of an arbitrator, and also a form of agreement for arbitration."

April 30, 1886. Plaintiff's counsel to insurance companies. "Mr. Hamilton, and I in his behalf, deny that the arbitration in the manner indicated is in violation of the terms of any of the policies, or imports any condition into it which the insured is not entitled to insist upon, or which is incompatible with the provisions of the several policies of insurance, or the rights of the insurance companies thereunder. Mr. Hamilton is ready, and has directed me to express his readiness, to proceed at once with an arbitration, which, as he understands it, is in substantial compliance with the arbitration provided for in all the several policies." "I wish to say that, as I understand the expression in my letter of the 29th, that 'it' (the tobacco) 'shall then be sold at public auction, in order that its value thus ascertained, together with such other evidence as either party may desire to offer, may be presented to the arbitrators before they make their award,' does not in any wise call upon the companies to consent to a sale of the property. Mr. Hamilton is quite ready to take upon himself the responsibility of

selling it. It simply requires that the arbitration shall be commenced before the sale, when the arbitrators may have an opportunity of examining the property, and that the award shall not be made until after the sale has taken place and the assured has had an opportunity to submit the result of it, with other competent evidence, to the arbitrators before the award is made."

May 3, 1886. Insurance companies to plaintiff's counsel. "We herewith enclose a form of agreement for 'submission to appraisers,' which is in practical accordance with the conditions of the policies of the several companies, and which all the companies are willing to sign and abide by the award reached thereunder. We must again decline to entertain your proposition that the arbitrators, after examining the stock, shall postpone their award until after the stock shall have been sold, when the result of such sale, with other evidence, shall be submitted to the arbitrators. We insist that the arbitration provided for in such case by our policies is in no sense a court for the hearing of evidence. The appraisers may, in their discretion, seek any evidence they deem necessary for their own full information, and the forming of their own judgments as to the value and damage of the goods; but we insist that under the conditions of the several policies there can be no abandonment of the stock to the companies, and that after an award has been reached the companies have the right to take the stock in whole or in part at their appraised value. The companies propose to stand upon the conditions of their policies, and decline all propositions looking to a waiver thereof, or adding new and inconsistent conditions thereto."

The principal part of the form of submission to appraisers, enclosed in this letter, was as follows: "It is hereby agreed by Robert Hamilton, of the first part, and the several insurance companies, by their representatives, whose names are hereunto affixed, of the second part, that —— —— and —— —— shall appraise and estimate the loss by fire of April 16, 1886, upon the property of Robert Hamilton, as specified below and as hereinafter provided. In case of disagreement

said appraisers shall select a third, who shall act with them in matters of difference only. The award of said appraisers or any two of them, made in writing in accordance with this agreement, pursuant to the terms of the policies, shall be binding upon both parties; but it is understood that this agreement and appraisement are only for the purpose of fixing the sound value of the property before the fire, and the loss or damage thereon occasioned by said fire, and shall not waive, invalidate or terminate the right of the insurers to take said property at its appraised value, or any other rights of either party hereto, but the same are to be construed solely by reference to said policies."

May 4, 1886. Plaintiff's counsel to insurance companies. "There can be no misunderstanding as to the position taken by the companies and the assured in this matter. 1st. I understand the companies demand that appraisers be selected by the companies and the assured, who shall estimate the loss by their own judgment and without hearing the testimony of witnesses who may be called by either party, and that the parties shall be bound by their report or award as to the amount of the loss thus made. This Mr. Hamilton declines to do. 2d. Mr. Hamilton is willing that the companies jointly, or as they may arrange between themselves, shall make their own appraisement through their own appraisers of the value of the stock, and that they shall jointly, or either of them with the consent of the rest, have the right to take the stock, in whole or in part, at their appraisal. 3d. Mr. Hamilton has made and makes no claim to abandon the property, and he has made and makes no claim that the companies shall consent to the sale by him of the damaged stock."

Enclosed in this letter, and signed by the plaintiff's counsel, was the following: "To the Liverpool and London and Globe Insurance Company and the companies jointly acting with it in respect to the loss sustained by Robert Hamilton on the property in Nos. 413 and 415 Madison Street, Covington, Ky.: Mr. Hamilton demands of the several insurance companies an arbitration of the amount of the loss sustained upon the goods covered by fire on the 16th of April, and will select an arbi-

trator to represent him in pursuance of the provisions of the policy, it being stipulated in the agreement for arbitration that the several companies and the assured shall be duly notified of the time of the hearing by the arbitrators, and that the arbitrators shall hear all competent legal testimony that may be offered by either party, as well as personally examine the damaged goods, in considering and awarding the amount of the loss."

May 5, 1886. Insurance companies to plaintiff's counsel. "Your communication of the 4th is at hand. We have nothing to add to our letter of the 3d; and if, as we are made to understand, Mr. Hamilton declines to consent to a form of 'submission to appraisers' that does not provide for the introduction of 'all competent legal testimony that may be offered by either party,' (under which provision, as you have repeatedly declared, Mr. Hamilton would seek to present evidence based on a sale of the property,) we must accept your communication as a refusal to comply with our request and with the conditions of the policies of insurance, which are clearly incompatible with your wishes in the matter."

May 7, 1886. Insurance companies to plaintiff's counsel. "Referring to your letter of the 4th, setting forth your understanding of the position taken by the two parties, permit me, on behalf of the companies, to take exceptions to your first statement, to wit: 'I understand the companies demand that appraisers be selected by the companies and the assured, who shall estimate the loss by their own judgment and without hearing the testimony of witnesses who may be called by either party, and that the parties shall be bound by their report or award as to the amount of the loss thus made.' This does not correctly state our position, which remains now as stated in our communication of the 3d, to wit: 'The appraisers may, in their discretion, seek any evidence they deem necessary for their own full information.' What we do object to and protest against is the sale of the goods, or the consideration by the appraisers of evidence founded on that fact or result. If the form of 'submission to appraisers' we submitted contains any provision or condition limiting or defining

the duties of the appraisers and not prescribed by the several policies, each company will submit its own form, as we desire and demand a submission free from any conditions imposed by either party."

May 8, 1886. Defendant to plaintiff's counsel. "On behalf of the Liverpool and London and Globe Ins. Company, we demand an appraisal of the value of and damage to the goods insured under our policies Nos. 2,823,517 and 2,907,224, issued to Robert Hamilton, of Covington, Ky., as the same could not be determined by mutual agreement between us, and we take exceptions to the amount of loss and damage as stated in your claim. We herewith submit a form of agreement of submission to appraisers which we deem in strict accordance with the terms and conditions of our policies, and upon your assent thereto will be prepared to name our appraiser."

The form enclosed in this letter did not materially vary from that enclosed in the letter of May 3, 1886.

May 10, 1886. Plaintiff's counsel to defendant. "In view of the number and diverse provisions of the several policies upon Mr. Hamilton's property, and of what has transpired, I do not conceive that the several companies are now entitled each to demand a separate submission to arbitration by Mr. Hamilton. It does not seem to me that any provision in the policies of your company provides for a submission to appraisers in the manner expressed in the form of agreement enclosed; and I have already expressed in the correspondence, upon the joint demand of all the companies, my reasons for this opinion, and my objections to this form of submission."

May 13, 1886. Defendant to plaintiff. "Objecting to the amount of your claim for loss and damage under policies 2,823,517 and 2,907,224, we demand, according to condition 10 of the policies, that the differences which have arisen between us as to sound value and loss or damage to the goods covered by said policies shall be submitted, at equal expense between us, to competent and impartial persons, one to be chosen by each party, and the two so chosen shall elect an umpire to act with them in case of their disagreement. We

name as our appraiser Wm. Spear, of St. Louis, and upon the naming of your appraiser we will meet you to sign an agreement embodying the provisions of our policies without any conditions. Please take notice that this company reserves the right to take the whole or any part of the property insured at its appraised value; and you are further notified that until such an appraisal is permitted and had, our loss, if any, will not be payable."

May 15, 1886. Plaintiff's counsel to defendant. "Mr. Hamilton adheres to the position taken by him in the joint correspondence between the insurers and Mr. Hamilton and myself in his behalf. Mr. Hamilton has acted upon the conclusion reached in that correspondence, and I do not understand that your company proposes to change its own attitude as taken in that correspondence."

May 20, 1886. Plaintiff's counsel to defendant. Enclosing a notice in a newspaper of the sale by auction on May 29, 1886, at the plaintiff's warehouse in Covington, of the tobacco insured by the policy in suit.

June 3, 1886. Plaintiff's counsel to defendant. "Mr. Hamilton has disposed of the property claimed to have been damaged in the fire of April 16, by sale at public auction, in pursuance of the notice communicated to your company. If your company really desire to submit to arbitration the question of the amount of loss sustained by Mr. Hamilton, notwithstanding all that has transpired, Mr. Hamilton is quite ready now to submit that question to competent and impartial arbitrators. He simply demands, the arbitrators being chosen, that in the agreement for submission it shall be provided that the company and the assured shall be notified of the time of the hearing of the arbitrators, and that the arbitrators shall hear all competent legal testimony that may be offered by either party, and that a reasonable time shall be prescribed within which an award shall be rendered."

June 7, 1886. Defendant to plaintiff's counsel. "As you have, in spite of our protest, sold and scattered the goods, so that an appraisement within the terms of our policies is now impossible, and have thereby deprived us of our right to take

the property or any part thereof at its appraised value, we must accept your action as a refusal to accede to our demand for submission of the differences that have arisen between us. By the course pursued, Mr. Hamilton has, in our judgment, waived any rights he may have had under the policies, and · this company will stand upon its legal rights in the premises."

The court, after the case had been argued, instructed the jury that it appeared from the evidence that the defendant requested the plaintiff in writing to submit the amount of his loss or damage under the policy to competent and impartial persons, and the plaintiff refused so to do; and instructed the jury to return a verdict for the defendant, which was accordingly rendered. The plaintiff excepted to these instructions, and, after judgment on the verdict, sued out this writ of error:

*Mr. Joseph Wilby* for plaintiff in error. At the close of Mr. Wilby's argument, the court declined to hear further argument.

*Mr. Channing Richards, Mr. Rufus King, Mr. Charles H. Stephens, Mr. S. J. Thompson, Mr. Thomas B. Paxton* and *Mr. Ledyard Lincoln* filed briefs for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The conditions of the policy in suit clearly and unequivocally manifest the intention and agreement of the parties to the contract of insurance that any difference arising between them as to the amount of loss or damage of the property insured shall be submitted, at the request in writing of either party, to the appraisal of competent and impartial persons, to be chosen as therein provided, whose award shall be conclusive as to the amount of such loss or damage only, and shall not determine the question of the liability of the company; that the company shall have the right to take the whole or any part of the property at its appraised value so ascertained; and that until such an appraisal shall have been permitted, and

such an award obtained, the loss shall not be payable, and no action shall lie against the company. The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action.

Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country. *Scott* v. *Avery,* 5 H. L. Cas. 811; *Viney* v. *Bignold,* 20 Q. B. D. 172; *Delaware & Hudson Canal* v. *Pennsylvania Coal Co.,* 50 N. Y. 250; *Reed* v. *Washington Ins. Co.,* 138 Mass. 572, 576; *Wolff* v. *Liverpool & London & Globe Ins. Co.,* 21 Vroom, 453; *Hall* v. *Norwalk Ins. Co.,* 57 Conn. 105, 114. The case comes within the general rule long ago laid down by this court: "Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so." *United States* v. *Robeson,* 9 Pet. 319, 327. See also *Martinsburg & Potomac Railroad* v. *March,* 114 U. S. 549.

Upon the evidence in this case, the question whether the defendant had duly requested, and the plaintiff had unreasonably refused, to submit to such an appraisal and award as the policy called for, did not depend in any degree, (as in *Uhrig* v. *Williamsburg Ins. Co.,* 101 N. Y. 362, cited for the plaintiff,) on oral testimony or extrinsic facts, but wholly upon the construction of the correspondence in writing between the parties, presenting a pure question of law, to be decided by the court. *Turner* v. *Yates,* 16 How. 14, 23; *Bliven* v. *New England Screw Co.,* 23 How. 420, 433; *Smith* v. *Faulkner,* 12 Gray, 251.

That correspondence clearly shows that the defendant explicitly and repeatedly in writing requested that the amount of the loss or damage should be submitted to appraisers in accordance with the terms of the policy; and that the plaintiff as often peremptorily refused to do this, unless the defendant would consent, in advance, to define the legal powers and duties of the appraisers, (which the defendant was under no obligation to do,) and that the plaintiff throughout, against the constant protest of the defendant, asserted, and at last exercised, a right to sell the property before the completion of an award according to the policy, thereby depriving the defendant of the right, reserved to it by the policy, of taking the property at its appraised value, when ascertained in accordance with the conditions of the policy.

The court therefore rightly instructed the jury that the defendant had requested in writing, and the plaintiff had declined, the appraisal provided for in the policy, and that the plaintiff, therefore, could not maintain this action.

If the plaintiff had joined in the appointment of appraisers, and they had acted unlawfully, or had not acted at all, a different question would have been presented.

*Judgment affirmed.*