Davis, J.
The record in these cases presents three material questions for decision. The determination of no one of them will be decisive of all of the cases. The same questions are understood to be involved in other cases which are still pending in the courts below. It has, therefore, been deemed advisable to. fully consider and decide all of these contentions in the present cases.
I. These suits were all brought in the partnership name, under the provision of Revised Statutes, Section 5011, and are not suits by the individuals who constituted the firm. It is true that each of the petitions contains an averment that Theophilus Carnahan and W. R. Carnahan are equal partners in the firm and compose the partnership; but in this form of action, this allegation is immaterial and is mere sur *264 plusage. Winters v. Means, 50 Neb., 209; Dimond v. Bank, 70 Minn., 298. Sometime after the actions were commenced, one of the partners died, and the death of this partner raises the question whether the-actions should hare been revived and should have proceeded in the name of the representative or successor of the firm, or whether, the death of the partner-having been suggested to the court, the action properly-proceeded to judgment under the order of the court, without change of caption or title. This point is-raised by motion to dismiss and by motion to arrest the testimony from the jury and to direct a verdict for the defendant.
It may be conceded at once that the cause of action did not abate by the death of one of the partners,, nevertheless his death dissolved the partnership firm,, so that the action was in abeyance, and could not proceed until somebody who succeeded to the ownership of the chose in action had been substituted for the defunct partnership firm. The action could no more proceed in the name of the late partnership than a. suit could be prosecuted in the name of an individual plaintiff who has died. Our statute provides that certain causes of action shall abate on the death of a party, but provides the mode by which, in all other cases, the action may be revived and proceed in the name of the representative or successor of the party who is under disability or has died. None of the sections of the statute which provide for revivor when one of several plaintiffs or defendants dies, applies, here, because there are not several plaintiffs in these-suits, but only one, the partnership firm' of T. & W., K. Carnahan. Revised Statutes, Section 5012, governs these cases, and is in part as follows: “Upon the disability of a party the court may allow the ac *265 tion to continue by or against his representative or successor in interest, and upon any other transfer of interest the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted for him ” This substitution may be made on motion of the successor in interest, or by a conditional order of revivor served on the opposite party, or by supplemental petition and process. Revised Statutes, Sections 5149-5151; Carter v. Jennings, 24 Ohio St., 182. This was not the procedure followed in these cases. The following journal entry is a sample of what was done in all of the cases: “The plaintiff, by its attorney, on this January 31, 1899, suggests that since the commencement of this action, T. Carnahan, one-of the plaintiff firm, has died, and that said W. R. Carnahan is now the sole surviving partner, ordered that this action proceed to judgment without change' of caption or title and this cause is continued to the next term thereof.” There was in this proceeding, a failure to comply with the statute, even if W. R.. Carnahan, as the sole surviving partner, was the sole-successor in interest of the late firm. But was he such successor? We think that it is perfectly clear that he was not, and is not, such successor under the Ohio statute. Revised Statutes, sections 3167-3169.. A surviving partner does not become the successor-in interest of the partnership until he has made application in the probate court for the appointment of appraisers who shall make, under oath,, a complete inventory of the assets and liabilities of the partnership- and deliver the same to the surviving partner who-shall file the same in the probate court, nor until he-has elected in the probate court to take the interest of the deceased partner in the partnership assets at its, *266 appraised value, and given bond for the payment of the debts of the partnership. Should the surviving partner fail to do this, it is made the duty of the executor or administrator of the deceased partner to apply for the appointment of a receiver, who shall proceed to wind up the partnership and dispose of the assets thereof.
It appears from these records that although an administrator for the estate of the deceased partner, was appointed and qualified, the surviving partner did not proceed under the statute, nor was a receiver appointed. In short, this statute not having been complied with, there was no successor in interest who was entitled to proceed with the action. Nor was this omission cured when brought to the notice of the court. Inasmuch as the surviving partner and the adminstrator of the.deceased partner neglected, and persisted in the neglect, to provide for a proper substitution of parties, and as the court did not revive the action in the mode provided by law, and the persons to whom the interest of the firm had been transferred did not apply to be substituted, it follows that all of the proceedings subsequent to the death of T. Carnahan were erroneous.
II. After the loss occurred and before suit was brought, the plaintiff and also T. Carnahan and W. R. Carnahan, assigned all their right, title and interest to the money to be paid in satisfaction of the loss, to The H. B. Clafiin Company of New York. This assignment does not appear to be contingent or in pledge, but is absolute; and the Carnahans “are to proceed to collect all said moneys in their name, but the same, when ready to be paid over, shall be paid directly to said The H. B. Clafiin Company, or their authorized agent.” The stipulation which we have *267 quoted makes the Carnahans agents of the Claflin Company for the purposes of mere collection; but it does not authorize suit to be brought in their name, although it so says; because the code is imperative that the action must be brought in the name of the real party in interest (Revised Statutes, Section 4993; Duncan v. Willis, 51 Ohio St., 433, 444; Buckingham v. Buckingham, 36 Ohio St., 69), and the Carnahans have reserved no substantial interest whatever in the money to be paid under the designated policies. Of the cases now under consideration this assignment affects only the Phoenix Insurance Company of Hartford and the Northern Assurance Company of London. After the suits were begun, that is, on January 17, 1895, and before the death of T. Carnahan, the plaintiff firm assigned, transferred and set over. to The H. B. Claflin Company the money coming to it on certain other designated policies, “absolutely to satisfy debts” due from the firm to said company, subject only to costs and charges of collecting. It was also stipulated that the pending suits should be prosecuted to termination by T. & W. R. Carnahan, but that the judgments that might be recovered thereon should belong to The H. B. Claflin Company. This assignment includes the policies of the Connecticut Insurance Co., of Hartford, the Commercial Assurance Co. of London, and the Phoenix Insurance Co. of Brooklyn. It left no right remaining in T. & W. R. Carnahan, except authority to act as agent for TheH. B. Claflin Company in the collection of the claims and to be reimbursed for costs, attorney fees and expenses incurred in that respect. Under both of these assignments The H. B. Claflin Company became the real party in interest. Spratley v. Hartford *268 Ins. Co., 1 Dillon (U. S.), 392. Hall v. Dorchester Mut. F. Ins. Co., 111 Mass., 53. And the only difference in the effect of them was that, under the one-first mentioned above, an action could not be legally-begun and prosecuted except in the name of the H. B. Olaflin Company, while under the second mentioned assignment the actions should have been revived by substituting the assignee of the interest as plaintiff. The case of Lowry v. Anderson, 57 Ohio St., 179, does not apply here. The point of that decision was that, .the transfer of interest, pending the suit, was no defense to the action, and that was the only point decided in the case. It was expressly stated in the-opinion that the assignee might be substituted for the-original plaintiff. The case does not touch the point, which arises here, viz: that the actions were not begun or prosecuted in the name of the real party in interest. We think that in this respect also there is reversible error in the proceedings of the courts below.
III. We come now to the discussion of questions which more directly affect the subject of the actions. For convenience we may regard the conditions of these several policies as substantially the same; for we do not regard the distinctions which are sometimes', drawn between “arbitration” and “appraisement,”' and between “disagreement” and “differences,” as being very material to our present inquiry. These policies all provide that upon the parties failing to agree, or upon differences arising, as to the amount of loss, or damage, the amount shall be ascertained by arbitration or appraisement, and that this shall be a condition precedent to the bringing of a suit upon the policies. This is a valid condition, as it does not operate to oust the courts of jurisdiction over the cause of action, but binds the parties only to the ascer *269 tainment, by appraisal, of a single element of the case, viz: the amount to be recovered,lUthere should "be'lihy recovery at all. A denial of ultimate liability is not necessarily a denial of the amount of the loss, and in many cases, perhaps in most cases, there is nothing inconsistent in demanding a compliance with the conditons agreed upon for ascertaining the amount of loss or damage, and at the same time insisting that there are legal defenses to any liability whatever. It is true, that there are classes of cases, total loss for example, in which it would be utterly vain to appraise the loss when all liability is denied; and when the insurer does not demand an appraisement and so insists upon a denial of any liability whatever as to mislead the insured into omitting to demand an appraisement, there may be sound reason for holding the insurer to be estopped from pleading the condition precedent. This is upon the principle that if either party acts in bad faith so as to defeat the real object of the clause, such conduct absolves the other party from compliance therewith. Uhrig v. Ins. Co., 101 N. Y., 365. But these cases do not call for the •application of this principle. The insurers have not deluded the insured into a failure to comply with the arbitration clause. On the contrary, they have persistently kept it before the insured and demanded compliance with it.
Under our code of civil procedure a defendant may set forth in his answer as many grounds of defense, counterclaim, or set-off, as he may have, provided that they are so far consistent that they can be verified by oath without swearing falsely. Revised Statutes, Section 5071. Bank v. Closson, 29 Ohio St., 78, 81; Ins. Co. v. Frick, 29 Ohio St., 466; Pavey v. Pavey, 30 Ohio St., 600. There is no inconsistency, nor any *270 implied falsehood, in the insurer swearing that he believes that the insured set his store on fire, or that he violated the conditions of the policy as to the storage of kerosene, and at the same time and in the same answer swearing that the insured neglected or refused to arbitrate as to the amount of his loss, when theparties to thecontract differeclon that point. Johnson v. Ins. Co., 41 Minn., 397; Kahnweiler v. Ins. Co., 3 Ins. L. J. N. S., 393; Briggs v. Ins. Co., 65 Mich., 52 Betcher v. Ins. Co., (Minn.), 80 N. W. Rep., 971. The insured does not, in its petition, plead a waiver of the arbitration clause, but on the contrary pleads performance on its part, of all the conditions precedent in the contract. But in reply it insists that the insurers have waived the arbitration clause, and charges bad faith on part of the insurers in all that was done-in regard to arbitration and appraisement. Now by the terms of each of these policies the condition as to-arbitration or appraisal of the loss is very clearly made a condition precedent; and therefore until the condition is complied with, or a fair effort made to comply, on part of the insured, no cause of action can arise. Old Saucelito Land and Dry Dock Co. v. Commercial Union Assurance Co., 66 Cal., 253; Uhrig v. Ins. Co., 101 N. Y., 362. There was no occasion for an appraisal of the loss, under the arbitration clause, before the proofs of loss were submitted, because what, the plaintiff would claim was unknown, and no difference of opinion had arisen as to the amount of the-loss before that time. Therefore there was not, and could not be, any waiver of that clause before that, time. Immediately on receiving the proofs of loss-the insurers notified the insured of their dissent from the claim of the insured as to the amount of the losa *271 and demanded an “arbitration to determine the amount of. tbe loss under tbe terms of tbe policy,” which they have insisted upon ever since. Then ensued a correspondence on that subject, extending over some weeks of time. The evidence in relation to a demand for appraisal by the insurers, and refusal thereof, by the insured, lies wholly within this correspondence; and it is impossible to regard it in any other light than as showing a definite assertion of a difference as to the amount of the loss claimed by the insured in its proofs of loss, an explicit demand for the appointment of appraisers, and a proposal to meet the insured at Findlay or elsewhere, at such time as might suit the convenience of, and be designated by, the insured, to carry out that purpose. This proposition, iterated and reiterated, is met by a denial that there was any “disagreement” or “difference” as to the amount of the loss, which was a distinct evasion of the demand; and it is the merest trifling with words to say that this quibbling and evasion, which was continued until an appraisal was rendered fruitless by the sale of the remnants by the insured, does not amount to a refusal on the part of the insured to perform the condition as to arbitration or appraisement of the loss. Hamilton v. Ins. Co., 136 U. S., 242; Zalesky v. Home Ins. Co., 102 Iowa, 613. While it was the explicit contractual duty of the insured to, at least, make a fair effort to comply with the conditions, an unfair effort to avoid it is disclosed by the correspondence. And yet the trial court not only refused to arrest the testimony from the jury, and to direct a verdict for the defendants, in each case, but instructed the jury that they were “at liberty to determine whether a demand for appraisal was made by the defendant in good faith with an intent on its part *272 to have such appraisal, and also whether, after such demand was made the defendant neglected and refused to go farther or appoint its appraiser and take such further steps as were necessary to make such appraisal effective.” If the insured had accepted the proposal to appraise and the insurers had then neglected or refused to go farther or to appoint appraisers, this instruction would have been proper; but when the insured neglected or refused to accede to the demand by the insurer, the latter was not bound to go farther in that respect. Indeed, whatever may be required of the insurer when once a demand for arbitration has been made on either side, the insurer is not bound to assume the initiative by making a demand. Kahnweiler v. Ins. Co. (U. S. C. C.), 3 Ins. L. J. N. S., 393. The insured can not rest upon the silence of the insurer as to arbitration, when a difference arises as to the amount of the loss. It was therefore incumbent on the insured, not the insurer, to perform this condition as a condition precedent to his right of recovery, whenever a difference should arise, as to the amount of the loss whether a demand was made by the insurer or not; and a fortiori when the other party asserted a difference and demanded a compliance with the contract, the insured firm was put to its choice, at its peril, whether to perform or not.
The court was also wrong in instructing the jury to determine whether the demand for appraisal was in good faith. The right to demand an appraisal was a distinct contractual right. The motive which lay behind the assertion of that right does not lay within the province of the court or jury. Where the parties have fixed their respective rights by contract, the *273 courts may not interfere with the terms of the contract, unless there was fraud in its inception. Good faith is required of both parties in the conduct of arbitration or appraisement when once entered upon; but when the right to have arbitration or appraisement is given to either party by contract, it is immaterial what motive may prompt a mere demand for performance. '
It may be suggested that if The H. B. Claflin Company is the real party in interest in some of these cases, the demand for appraisement should have been made upon them. The firm of T. & W. B. Carnahan was, however, the agent of the Claflin Company for the collection of the money, and demand upon the agents who had charge of and were in possession of both the policies and the property to be appraised, was demand upon the principal. In fact, the first notice of disagreement and demand for arbitration to T. & W. R. Carnahan was before The H. B. Claflin Company gave notice to the insurers of the assignment to it.
It follows that the judgment of the circuit court and of the court of common pleas in all of these cases must be reversed, and that in all of the cases, except that of the Insurance Company of North America, final judgment must be rendered in favor of the plaintiffs in error, respectively. In the case of the Insurance Company of North America v. T. & W. R. Carnahan, the assignment was made pending the action, and the defense as to failure to perform the conditions in regard to arbitration, was withdrawn. As the action may be revived, with consent of the plaintiff, by substitution of the assignee as plaintiff (Revised Statutes, Section 5158), that case will be re *274 manded for further proceedings. If the insurance company should refuse to consent to such revivor, it would be the duty of the court of common pleas to dismiss the petition and render final judgment for the defendant, plaintiff in error here.

Reversed.

Minshall and Williams, JJ., dissenting.