### SUCESORES DE BIANCHI et al. v. SHOPE.

(Circuit Court of Appeals, First Circuit. May 22, 1924.)

No. 1694.

1. Corporations ⬤⟿30(6)—Rendering of bill for services in organizing corporation to the corporation not conclusive that organizers are not liable therefor.

   That an attorney rendered a bill for services relating to the organizing of a corporation and its taking over the property of the organizers to the corporation is not conclusive that the original owners, who employed him, are not liable therefor, but is a circumstance to be weighed by the jury with the other evidence.

2. Appeal and error ⬤⟿882(14)—Party bound by consent to submission of issue to jury.

   A party at whose request an issue is submitted to the jury cannot later contend that it was a question of law for the court.

In Error to the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Action at law by Julian B. Shope against Sucesores de Bianchi and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Benjamin F. Norris, of New York City, for plaintiffs in error.

Avery F. Cushman, of New York City (Julian B. Shope, of New York City, on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In the court below the plaintiff had a verdict and judgment for $4,856 for professional services as a lawyer. The case comes here on nine assignments of error. The sole

defense was that the services were rendered and charged to the West Porto Rico Sugar Company. Defendants admitted that the services were rendered and the charges therefor just and fair.

Plaintiff's case goes on one or both of two grounds:

(1) That the services were rendered to the defendants and at their request, though with reference to certain properties the legal title of all or part of which had then been transferred to the sugar company.

(2) That, even if the original debtor was this corporation, the defendants agreed, on good consideration, to assume and pay the bill.

While the questions before us are few and fall within narrow compass, yet enough of the unnecessarily long and complicated record must be stated to show what these questions are.

[1] Many, perhaps most, of the important facts are undisputed: In April, 1917, the defendants, copartners, owning sugar properties in Porto Rico, employed the plaintiff to organize a Delaware corporation, the West Porto Rico Sugar Company, to take over these properties. This he did and was paid for it. Defendants received the stock of the corporation, $2,000,000 preferred and 10,000 shares of common of no par value. They also caused their new corporation to make an unusual contract with them, by which they not only became managers of it, but took its entire operating income and agreed to pay its operating expenses, receiving annually 10 per cent. of the net profit as compensation. They also arranged with a brokerage concern to sell stock, and took the proceeds of such sales. So that—as there is at least evidence tending to show—the corporation never even had a bank account. Later, in March, 1918, another Porto Rican corporation of the same name was organized to take over the properties from the Delaware corporation, assuming its liabilities, and exchanging stock share for share. Trouble arose as to a block of preferred stock, par $750,000, of the Delaware corporation, which had been deposited with the brokers; they subsequently became bankrupt, thus necessitating reclamation proceedings.

It thus appears that the defendants and the purchasers of their stock remained, throughout the entire period now involved, the beneficial owners of these sugar properties, as well as the active managers. For most purposes the two corporations were mere shells, holding the legal titles, or some of them, and issuing stock, concerning the sale of which various troubles arose, only dimly disclosed in this record.

The services for which this suit was brought, plaintiff alleges, were rendered at the request of defendants between December 15, 1917, and March 22, 1918, mainly with reference to the new Porto Rican corporation, the defendants' titles to the properties (which had been or were to be transferred), and to another property on which the defendants had an option. Under date of May 31, 1918, plaintiff rendered a bill to the West Porto Rico Sugar Company; but he testifies explicitly that most, if not all, of the services were really rendered to the defendants, and at their request.

It is plain enough that it was for the jury to say whether the original debtor was the defendants or the corporation. This bill, and plaintiff's letters referring to his bill "against the corporation," were, as the

trial court properly charged, admissions making against the plaintiff's claim, to be weighed by the jury in connection with the rest of the evidence. But they were not conclusive. There is obviously nothing unusual in a lawyer's making out his bill for services to a corporation that is expected to take over the properties and business and assume the preliminary expenses of the original owners who have employed him. But, until there is a novation, such owners remain liable for all obligations they have incurred.

In the spring of 1918, defendants employed other lawyers, who insisted upon having the plaintiff associated with them. Defendants confirmed this arrangement by the following letter:

"New York, May 2, 1918.

"Julian B. Shope, Esq., 60 Wall Street, New York City—Dear Sir: We' have been informed by Messrs. Bouvier, Beale & Geer, our attorneys, that they have retained you as counsel in the matters which they have under their charge for us. your fees to be paid and fixed by them.

"This is satisfactory to us.

"Yours very truly,                    Sucesores De Bianchi.
                                        "By Juan Bianchi."

In the ensuing litigation, plaintiff was associated with Mr. Beale, and received either $3,750 or $5,000 for those services. Meantime the bill now in suit remained unpaid. It was suggested that the plaintiff take charge of the reclamation proceedings in the bankruptcy court. Thereupon, in October, 1919, there was correspondence between the plaintiff and Mr. Phelan Beale, of Bouvier, Beale & Geer, concerning the plaintiff's conducting the reclamation proceedings in the bankruptcy court with no charge therefor, in consideration of the defendants' agreeing to pay the old bill now in suit. This correspondence need not be stated in detail, for its significance in connection with the rest of the evidence was, as noted below, at the defendants' request, submitted to the jury, and the jury determined the issue in favor of the plaintiff.

The evidence showed that plaintiff thereafter, from February 1, 1920, to April 1, 1921, was frequently engaged in the reclamation proceedings before the referee in bankruptcy on the matters in which the defendants and their interests were involved. In this litigation he was successful. His services Mr. Beale described as "unquestionably of a value in excess of the amount of your bill of 1918, which, if I remember correctly, was in the vicinity of $4,800."

Parenthetically, we observe that on this statement of Mr. Beale's and the defendants' admission, above noted, that plaintiff's former services were worth the full amount of the bill, the plaintiff seems to have earned the money, now sued for, twice. This is not generally true of contested lawyer's bills.

[2] There was conflicting evidence, oral and in letters, as to the scope of Mr. Beale's powers to bind the defendants, as well as to what he did in that regard. But the court, at the defendants' request, gave the jury this instruction:

"1. The court instructs the jury that an attorney has no power to bind a client with the acceptance of a debt, unless specifically instructed to do so; and consequently it is a question for the jury to consider whether the letter of May 2, 1918, addressed from Mr. Bianchi to Mr. Shope, informing him that Messrs. Bouvier, Beale & Geer had retained Mr. Shope as counsel in matters

which they had under charge for Bianchi, his fees (Mr. Shope's) to be paid and fixed by them (Bouvier, Beale & Geer), and that such arrangement was satisfactory, was an authorization from Bianchi to Beale to promise Mr. Shope that Bianchi would pay to Shope the bill that he was claiming against the West Porto Rico Sugar Company of $4,780, more or less."

Plainly, as the defendants asked to have the jury determine the issue as to whether Mr. Beale had been authorized and undertaken to bind the defendants to pay the old bill, they cannot now contend that, as matter of law, this issue was for the court. Compare Hamilton v. Insurance Co., 136 U. S. 242, 255, 10 Sup. Ct. 945, 34 L. Ed. 419; 2 Williston, Contracts, § 616.

Turning now to the assignments of error, we observe that the defendants' learned counsel has argued only VI and VIII. We infer that the rest are waived, as well they may be, for, on examination, we find them all without merit.

As to VIII (that there was no evidence for the jury), as stated above, plaintiff's first contention, that the original debtors were the defendants and not the corporation, was a plain question of fact, properly submitted; and his second contention, that the debt, even if originally the corporation's, was submitted to the jury in exact accordance with the defendant's request. There is no merit in assignment VIII.

This leaves only assignment VI. This, also, is not in terms argued, and might properly be regarded as waived. But we have considered it, so far as we can on a record blind and confusing, as to what parts of Mr. Beale's lengthy deposition were finally read to the jury. We think it fairly clear that any conversation between Mr. Beale and the defendants, properly admissible to show the extent and limitations of his authority to bind the defendants as to plaintiff's bill, was put in evidence under his statement, "I repeated this conversation to Mr. Shope."

It follows that if, as is far from clear, the original ruling complained of was too strict, defendants were not harmed.

Finding no reversible error, the judgment must be affirmed, with costs to the defendant in error.

The judgment of the District Court is affirmed, with costs to the defendant in error.