The BARTON GROUP, INC., Plaintiff,

v.

NCR CORPORATION, Defendant.

No. 08 Civ. 5679(FM).

United States District Court,
S.D. New York.

Nov. 2, 2010.

Harry P. Sacks, Sean C. Sheely, Steven M. Raffaele, Holland & Knight LLP, New York, NY, for Plaintiff.

Ira George Greenberg, Edwards Angell Palmer & Dodge, LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

This breach of contract action is based on diversity jurisdiction. The trial is scheduled to commence on December 1, 2010. Plaintiff Barton Group, Inc. ("BGI") has moved *in limine* for a determination that it was, as a matter of law, merely a "finder" under the terms of its written business generation agreement ("Agreement") with defendant NCR Corp. ("NCR"). (ECF No. 38). The motion, in effect, seeks a pretrial ruling that the Court will not give certain jury instructions, requested by NCR, which state that BGI had to be a procuring cause of a sale to earn a commission and that it owed fiduciary duties to NCR. For the reasons set forth below, BGI's motion is denied.

## I. *Relevant Facts*

BGI and NCR entered into the Agreement on September 3, 2003. (*See* Joint Pretrial Stmt. (ECF No. 31) ("JPTS") ¶ (B)(15)). At the time, BGI was a consultant to the McDonald's fast-food restaurant chain in the area of "food packaging and food processing operations." (*Id.* ¶ (B)(3)). BGI's consulting services related to the development of thermal labels that could be affixed to, or printed on, McDonald's food wrappers. (Agreement at 1). As a manufacturer of consumable products, including paper products and la-

bels used in the food services industry, NCR implemented BGI's ideas for McDonald's food labels and wrappers. (JPTS ¶ (B)(9); Decl. of Ira Greenberg, dated Oct. 13, 2010 (ECF No. 41), Ex. C).

Pursuant to the Agreement, NCR designated BGI as NCR's "exclusive sales agent with respect to, and strictly limited to [several food labeling and packaging projects with McDonald's] for all sales of products, machinery and equipment, supplies and technology transfer." (Agreement ¶¶ 1, 1.1). BGI, in turn, "agree[d] to accept such exclusive agency and, as NCR shall direct, to represent NCR in NCR's efforts to secure the [food labeling and packaging projects with McDonald's]." (*Id.*). NCR agreed to pay BGI a "business generation commission" of four percent of NCR's ongoing sales to McDonald's of products subject to the Agreement. (*Id.* ¶ 6).

The Agreement further provided that the parties would "work together to promote the convergence of [two existing projects]" into a third project. (*Id.* ¶ 5). This would entail, "at a minimum, coordination of efforts," including "technological approach, engineering solutions, communications, and facilitation of discussions between and among the various stakeholders at [McDonald's]." (*Id.*). In furtherance of that goal, BGI represented and warranted that it would provide McDonald's with information that it received from NCR "in aid of NCR's efforts to secure the [projects]." (*Id.* ¶ 2). NCR, however, "retain[ed] the right and ability to interact directly with [McDonald's] without involving BGI." (*Id.* ¶¶ 1, 1.1).

The Agreement declared that the parties were "independent contractors." (*Id.* ¶ 3). It further provided that the parties generally could not bind one another, stating:

Nothing in this agreement shall be construed to give either the power, express or implied, to direct or control the daily activities of the other, or to constitute the parties as employer and employee, franchisor and franchisee, partners, joint venturers, co-owners, principal and agent, or otherwise as participants in a joint undertaking. Each party understands and agrees that, except as specifically provided here, neither party grants the other the power or authority to make or give any agreement, statement, representation, warranty, or other commitment on behalf of the other, or to enter into any contract, or otherwise incur any liability or obligation, express or implied, on behalf of the other.... Neither party, nor any representative, agent or subcontractor of a party, will hold itself out as anything but an independent contractor to the other party.

(*Id.*).

The Agreement also contains several "whereas" clauses further describing the scope of the relationship between BGI and NCR. (*See id.* at 1). These clauses recite the parties' desire to "work together" in their efforts to develop food labels and wrappers for McDonald's. (*Id.*). They also state that any proprietary information received by BGI under the Agreement would be used "sole[ly]" to "advanc[e] NCR's interests with [McDonald's]." (*Id*).

Pursuant to the Agreement, NCR paid BGI a commission of four percent of its sales to McDonald's, which totaled $39,828.45 from 2004 to 2008. (JPTS 57¶ (B)(29)-(31)). In February 2008, however, NCR wrote to BGI and indicated that it would no longer make any commission payments. (*Id.* ¶ (B)(33)). Shortly thereafter, BGI commenced this action.

In preparation for the upcoming trial, BGI and NCR have submitted to the Court their proposed requests to charge.

(*See* ECF No. 34 ("Req. to Charge")). In its motion *in limine,* BGI reiterates two objections to NCR's requested instructions that it initially raised in the requests to charge. (ECF No. 40 ("Pl.'s Mem"). at 5–10). BGI's first objection relates to NCR's Requested Charge No. 2, which seeks an instruction that BGI, as an exclusive sales agent, owed NCR a "duty to use its best efforts to further [NCR's] goals and the duty of total good faith toward [NCR]." (Req. to Charge at 20). BGI contends that the Agreement did not create a principal-agent relationship between the parties and that BGI, as a "finder," had no obligation "to exercise the utmost good faith toward" NCR. (*Id.* at 20–21).

BGI's second objection concerns NCR's Request to Charge No. 3, which states that, "to be entitled to a sales commission, a sales agent must be the procuring cause of the sale. . . . [T]he sales agent must be a direct and proximate link to the sale . . . rather than merely being an indirect or remote link to the sale." (*Id.* at 22). BGI's objection again is based on its assertion that BGI was a finder, not a broker, and therefore was "not required to carry out negotiations or draft contracts, [but] only to make an introduction" between NCR and McDonald's. (*Id.*).

NCR, in opposition, contends that BGI was not a finder but a broker, or, alternatively, a sales representative. (ECF No. 42 ("Def.'s Mem.") at 1–2).

The Agreement states that its "interpretation and enforcement . . . shall be governed by the substantive law of the State of New York." (Agreement ¶ 11).

## II. *Applicable Law*

### A. *Contract Interpretation*

The interpretation of a contract presents a question of law when it is unnecessary to resort to extrinsic evidence to interpret the undisputed terms of the agreement. *See Antilles S.S. Co. v. Members of the Am. Hull Ins. Syndicate,* 733 F.2d 195, 203 (2d Cir.1984) (Newman, J., concurring) (citing *Hamilton v. Liverpool & London & Globe Ins. Co.,* 136 U.S. 242, 255, 10 S.Ct. 945, 34 L.Ed. 419 (1890)). Thus, when a contract is susceptible to "only one reasonable interpretation," the court may decide issues regarding interpretation. *Id.* at 204. Moreover, as a threshold matter, whether the contract is clear or ambiguous is for the court to decide. *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 158 (2d Cir.2000); *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 149 (2d Cir.1993).

Under New York law, a contract is not ambiguous "simply because the parties urge different interpretations." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 616 (2d Cir.2001) (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992)). "Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Assocs., Inc.,* 959 F.2d at 428 (quoting *Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957) (alteration in original)).

When a contract is unambiguous, the court must "give effect to the intent of the parties as revealed by the language they chose to use." *See id.; see also G.D. Searle & Co. v. Medicore Commc'ns, Inc.,* 843 F.Supp. 895, 906 (S.D.N.Y.1994) (court is restricted to the "four corners" of the agreement when interpreting unambiguous contract). In considering a particular provision, however, the court should examine the entire structure of the agreement and attempt to reconcile its various provisions. *Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir.2000).

### B. *Roles of Finders, Brokers, and Sales Representatives*

■■■■ Although finders and brokers may "perform some related functions," they have distinct roles in business transactions. *Northeast Gen. Corp. v. Wellington Adver., Inc.*, 82 N.Y.2d 158, 162, 604 N.Y.S.2d 1, 624 N.E.2d 129 (1993). A finder's job is "to introduce and bring the parties together, without any obligation or power to negotiate the transaction." *Id.* at 163, 604 N.Y.S.2d 1, 624 N.E.2d 129. A broker, by comparison, also introduces parties but then must "bring the parties to an agreement." *Id.; see Greene v. Hellman*, 51 N.Y.2d 197, 206, 433 N.Y.S.2d 75, 412 N.E.2d 1301 (1980) (broker must be "direct and proximate link" or "procuring cause" of the deal to earn a commission); *see also Black's Law Dictionary* 707 (9th ed.2009) ("finder merely brings two parties together to make their own contract, while a broker-dealer usu[ally] participates in the negotiations"). Because of this additional requirement, "a broker in New York . . . carries a defined fiduciary duty to act in the best and more involved interests of the principal." *Northeast Gen. Corp.*, 82 N.Y.2d at 163, 604 N.Y.S.2d 1, 624 N.E.2d 129. A finder, as an intermediary between the two parties, "has significantly fewer and different responsibilities to the hiring client." *Id.* Consequently, a finder fulfills his job simply by introducing parties to one another, while a broker must take additional steps to negotiate and secure the deal.

■■■■ A "sales representative," as defined in the New York Labor Law, is a creature wholly different from a finder or broker. A sales representative is an independent contractor, either a person or an entity, that "solicits orders" in New York State. N.Y. Lab. Law § 191–a(d). The New York Labor Law thus excludes from this definition "commissioned salesmen," who are employees, not independent contractors. N.Y. Lab. Law § 191–a(d); *see id.* § 190(6); *see also Deutschman v. First Mfg. Co.*, 7 A.D.3d 363, 364, 775 N.Y.S.2d 855 (1st Dep't 2004) ("No serious argument can be made that plaintiff, a salaried employee, was an independent contractor."). As an independent contractor, a sales representative has the freedom to solicit orders in the manner and method that she chooses. *See Black's Law Dictionary* 839 (9th ed.2009) (defining "independent contractor").

### III. *Analysis*

In considering BGI's motion *in limine*, the Court's first task is to determine whether the conflicting interpretations urged by the parties are reasonable. If the Agreement is susceptible to only one reasonable interpretation, the Court may interpret it as a matter of law. *Antilles S.S. Co.*, 733 F.2d at 203–04 (Newman, J., concurring).

■■■■ Turning first to BGI's contention that it is a "finder," the Court determines that this interpretation of the Agreement is untenable. BGI was required to do more than merely "set[ ] the wheels in motion for a transaction" between NCR and McDonald's. (Pl.'s Mem. at 5). For example, the plain language of the Agreement states that BGI and NCR "shall work together" to develop food labels and wrappers by coordinating their efforts with respect to technology and "engineering solutions." (Agreement ¶ 5). Similarly, BGI was obligated to "represent" NCR in connection with "NCR's efforts to secure" sales contracts with McDonald's. (*Id.* ¶¶ 1, 1.1).

In light of this language, it is unreasonable to conclude that BGI's only responsibility was to bring NCR and McDonald's together so that the two contracting parties could conduct their own transaction.

If BGI's role necessarily were as limited as it now urges, there would have been no reason to require BGI to participate actively in the development of products that NCR sought to sell to McDonald's, nor would BGI have needed to assist NCR in obtaining sales contracts with McDonald's. It is clear from these terms of the Agreement that the parties intended for BGI to play a role not only in bringing NCR and McDonald's together, but in the creation and development of food labels and wrappers, as well as the representation of NCR in sales contract negotiations. It follows that the "quality and quantity of services" required of BGI pursuant to the Agreement go beyond the limited responsibilities of a finder. *Northeast Gen. Corp.*, 82 N.Y.2d at 163, 604 N.Y.S.2d 1, 624 N.E.2d 129.

In arguing to the contrary, BGI focuses on Paragraph 3 of the Agreement, which designates both parties as independent contractors. (*See* Pl.'s Mem. at 5–7). However, BGI overlooks important limiting language in the latter half of that paragraph, which states: "Each party understands and agrees that, *except as specifically provided here*, neither party grants the other the power or authority to make or give any agreement, statement, representation, warranty or other commitment on behalf of the other, or to enter into any contract ... on behalf of the other." (Agreement ¶ 3) (emphasis added). BGI and NCR therefore had no authority to act on each other's behalf, *except* to the extent that the Agreement elsewhere granted them that authority. The first two paragraphs of the Agreement clearly provide such authority for BGI to serve as NCR's "exclusive sales agent" and to "*represent* NCR in NCR's efforts to secure" sales contracts with McDonald's. (*Id.* ¶¶ 1, 1.1) (emphasis added). BGI consequently had the "authority to make or give [a] ... representation" to McDonald's on behalf of NCR for the purpose of securing sales contracts, thus overriding the general language in Paragraph 3 prohibiting such authority.

Put simply, the Agreement contemplated that BGI and NCR would develop food labels and wrappers, which NCR would produce and sell to McDonald's. Moreover, BGI would assist NCR in obtaining sales contracts with McDonald's by serving as its "exclusive sales agent" for the products that they were developing jointly. (*Id.*). In light of these duties, the Court cannot conclude, as a matter of law, that BGI was merely a finder.[1] *See Fed. Trade Comm'n v. Metro. Commc'n Corp.*, No. 94 Civ. 142(JFK), 1995 WL 571461, at *3–4 (S.D.N.Y. Sept. 27, 1995) (party who assists in arranging sales on behalf of another is a broker).

## IV. Conclusion

For the forgoing reasons, BGI's motion *in limine.* (ECF No. 38), is DENIED. Further, it is hereby ORDERED that the jury trial of this matter shall commence on December 1, 2010, at 11:00 a.m., in Courtroom 20A, United States Courthouse, 500 Pearl Street, New York, New York 10007.

SO ORDERED.

---

1. The Court similarly cannot conclude, as a matter of law, that BGI was a sales representative within the meaning of the New York Labor Law. As discussed above, BGI had several obligations under the Agreement with NCR, which included developing products, serving as an exclusive sales agent for several products, and assisting NCR in securing sales contracts. (Agreement ¶¶ 1, 1.1, 5). BGI's role, therefore, arguably was more expansive than that of a traditional sales representative, who simply "solicits orders." *See* N.Y. Lab. Law § 191–a(d).