## HUGHES v. DUNDEE MORTGAGE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 306.   Argued April 14, 15, 1891. — Decided April 27, 1891.

By the terms of the appointment of a law agent in this country of a corporation established at Dundee in Scotland, and engaged in lending money upon mortgages of real estate here, he was to " do all work, and carry through all procedure, and see to the execution and registration and publication of deeds, requisite and necessary for giving and securing to the company valid and effectual first and preferable mortgages over real estate for such loans as the directors at Dundee may from time to time sanction and authorize," and was to " be responsible to the company for the validity and sufficiency of all mortgages prepared or taken by " him; was not to take or receive in behalf of the company any commission or bonus from borrowers beyond lawful interest on money lent; nor to act as a local director of the company, or be interested in any property mortgaged; and his " professional fees against borrowers, including abstracts, searches, investigating titles, preparation and recording of mortgages," were not to exceed a scale prescribed. *Held*, that the duties for which he was to be compensated by fees from borrowers, included giving to the company certificates of title; and that his successor, appointed on the same terms, except in being expressly required to grant certificates of title, and in being also made general attorney and counsellor of the company, could not recover anything from the company for making out such certificates.

THIS was an action brought against the Dundee Mortgage and Trust Investment Company, Limited, a corporation of Great Britain, having its home office at Dundee in Scotland, and an office at Portland in Oregon, and engaged in lending money on the security of mortgages of land in that State and in Washington Territory, by Ellis G. Hughes, an attorney at law and a citizen of Oregon, to recover the reasonable value of services performed by him from January 1, 1875, to January 31, 1880, for the Oregon and Washington Trust Investment Company, Limited, (a similar corporation, alleged to have been since consolidated with, and its liabilities assumed by, the defendant,) in issuing to that company written certificates of

title upon loans made by it upon such mortgages. One defence set up in the answer was that by a special contract between that company and the plaintiff he was to be paid only out of the fees charged to borrowers.

At the trial, the plaintiff offered in evidence the following documents:

1st. A resolution of the board of directors of the Oregon and Washington Trust Investment Company, Limited, dated December 17, 1875, in these terms:

"Attorneyship. The directors, having in view the recommendation of the local board, resolved and hereby resolve to appoint Mr. Ellis G. Hughes as the local agent of the company, this appointment to subsist during the pleasure of the Dundee board."

2d. A letter of the secretary of the same company, dated December 18, 1875, transmitting to plaintiff that resolution, and saying:

"I have now the pleasure to annex extract from the minutes of a meeting of my directors, held yesterday, from which you will see that they have appointed you to the very responsible position of law agent for the company in Portland, Oregon. I do not at this time require to enlarge upon the duties required from you in this position, as you already have had some considerable experience of them. It may be well, however, to remind you of what you no doubt have very clearly in view, viz. that in all cases the company has a clear and indisputable first mortgage to the subjects pledged in security, and that the company's business is conducted in accordance with the laws of the State of Oregon, the Territory of Washington and the United States of America, are matters for which you are personally responsible to my directors and the company."

3d. Certain printed rules transmitted to the plaintiff at the same time, as follows:

"Attorney at law. It shall be the duty of the company's attorney or attorneys —

"(A) To prepare all mortgages, deeds, notes, coupons and other documents in connection with the company's loans, and

to be responsible for their due execution, publication, registration and validity. .

" (B) To be responsible that all mortgages taken are a clear and indisputable first lien upon the subjects mortgaged, and to grant certificates to that effect.

.. " (C) To take charge of and to conduct such proceedings as may from time to time be instituted by the company, or in which the company may be interested, subject to such instructions as may be issued thereanent. .

" (D) To advise the local board and the directors of any point of legal or other interest to the company, which may be developed or come under his or their notice from time to time, by legislative or judicial action or otherwise.

" (E) And generally to give his or their best attention to all matters connected with the legal department of the company's business, and to give such information or advice as may from time to time be requested or occur to him or them."

The plaintiff then proved the issue of the certificates mentioned in the declaration, and introduced testimony as to the value of the services rendered and responsibility assumed in issuing the same; and rested his case.

Whereupon, it being then admitted in open court "that Addison C. Gibbs had been the attorney of the Oregon and Washington Trust Investment Company, Limited, prior to the appointment of the plaintiff as such, that the plaintiff had been the partner of said Gibbs, and had taken his appointment on the same terms as Gibbs had held his, save only as it might be varied by the resolution, the letter of the secretary, and the printed rules, offered in evidence by the plaintiff," the defendant offered in evidence a letter from the secretary of that company to Gibbs, dated August 22, 1874, which, it was admitted, contained the terms of the appointment of Gibbs, and the body of which was as follows:

. " The directors of the Oregon and Washington Trust Investment Company, Limited, have had under consideration a recommendation to appoint you as law agent in and concerning the preparation of mortgages for loans authorized by them in America, and I have now the pleasure of informing you that

they have appointed you as law agent on the following footing:

" 1. You shall do all work, and carry through all procedure, and see to the execution and registration and publication of deeds, requisite and necessary for giving and securing to the company valid and .effectual first and preferable mortgages over real estate for such loans as the directors at Dundee may from time to time sanction and authorize.

" 2. In the performance of your duties as law agent aforesaid you will have regard to the amended rules made by the directors, of which a copy is hereunto annexed.

" 3. You shall not directly nor indirectly take or receive for behoof of the company any commission, bonus or other benefit from a borrower; and the company shall not covenant for or accept in respect of any loan anything but the interest conditioned to be paid in and by the mortgage, and which interest shall never exceed what is lawful and right.

" 4. You shall not, by yourself or any or either of your partners, be or act as local directors of the company; and you shall not, directly nor indirectly, be interested in any property mortgaged or proposed to be mortgaged to the company, or be in copartnery or joint adventure or otherwise connected with any borrower.

" 5. Your professional fees against borrowers, including abstracts, searches, investigating titles, preparation and recording of mortgages, shall in no case exceed what the laws of the State warrant, and, although the law might warrant and allow more, shall never exceed what follows: Scale of maximum fees to be charged borrowers by law agent. For loans under $2001, $3\frac{1}{2}$ per cent (exclusive of travelling and hotel bills); for loans under $4001 and above $2000, 3 per cent (inclusive of ditto); for loans above $4000 and under $20,000, $2\frac{1}{2}$ per cent (do. do.).

" 6. You shall be responsible to the company for the validity and sufficiency of all mortgages prepared or taken by you.

" 7. I commend to your attention a letter which I have to-day written to Mr. Reid, defining his duties as manager of the company at Portland; and both you and he will be

pleased to understand that that appointment, according to the terms of that letter, and your appointment, according to the terms of this letter, are made upon the footing that the said appointments and terms thereof are lawful and right, according to the laws of the States or countries in which the real estates upon which the company's loans may be made are situated, and according to the laws of the United States; and nothing shall be done by you or Mr. Reid, directly or indirectly, either in your own names or for your own behoof or in the name or for behoof of the company, to prejudice or affect or imperil in any way the validity and sufficiency of any mortgage granted or to be granted to the company, or to create or give rise to any claim, penalty, tax or other exaction or loss to the company.

" 8. Your appointment is, of course, at the pleasure of the company."

The defendant also offered in evidence the following parts of a letter written by the plaintiff to John Leng, one of the directors of the Oregon and Washington Trust Investment Company, Limited, dated September 30, 1876:

" To take up separately the different subjects upon which you requested an expression of my views." " Attorney's fees. The fees now charged upon each loan as the fees of the attorney for the examination of titles, and of which one half of one per cent on the entire amount of the loan is now paid to Mr. Reid, is a scale of fees based upon the minimum charges made by respectable and responsible attorneys here for the same service and responsibility. I have always felt that it was an injustice to the attorney to require any part of these fees to be paid to the company's manager. The division was acceded to, at the time when established, under the belief that, if the company's expenses were kept down until it was demonstrated that its business in Oregon would be profitable, the directors would then feel disposed to make such allowance for the pay of its manager, etc., as to give to each one employed in the company's service ample compensation for services rendered. The business of the company is now in such a prosperous condition as, I think, entitles me to ask that I be allowed

to receive for my services in their behalf at least the minimum fees charged for like services by gentlemen in equal standing in my profession here, which would be the entire fees now charged borrowers, and out of which there is now paid Mr. Reid one half of one per cent on the entire amount of the loan. It would be no object to, but in fact a loss for me to continue to act as the attorney of the company if the fees actually received by me are to continue as at present."

The defendant also offered in evidence a resolution of the Oregon and Washington Trust Investment Company, Limited, dated November 23, 1876, in these terms :

" Attorney. That Mr. Hughes, the company's attorney, be remunerated by fees charged borrowers in terms of scale of March, 1875, and now current. The directors trust that these rates of remuneration, which, along with the relative appointment, are to continue during their pleasure, will be satisfactory to all concerned."

The plaintiff, for the purpose of showing the meaning and intent of that resolution, offered in evidence a letter from John Leng to the plaintiff, dated November 24, 1876, in these terms :

" My colleagues have cordially adopted my recommendation that you receive your fees according to the scale now subsisting, without any deduction. This will take effect 1st January, and I hope will be quite satisfactory to you. I learned in the Eastern States that the mortgage form of one large lending company provides that the expenses paid to the attorney in the event of foreclosure shall be such sum as the court may consider reasonable or a reasonable sum. They say the borrower never objects to this, and the attorney is always allowed what satisfies him. Would it not be well for you to adopt this ? "

The plaintiff also proved that that resolution was transmitted to him with that letter. No other testimony as to the terms of the contract with the plaintiff was offered by either party.

The court directed the jury to return a verdict for the defendant, and entered judgment theron ; and the plaintiff excepted to the direction, and sued out this writ of error.

*Mr. J. N. Dolph* for plaintiff in error.

*Mr. J. Percy Keating* and *Mr. Thomas De Witt Cuyler* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

It has been necessary to state the facts at length in order to make the case intelligible. But the questions of law lie within a narrow compass.

The scope and effect of the contract in question depended wholly upon written correspondence, and in no degree upon extrinsic circumstances, and were, therefore, to be determined by the court. *Goddard* v. *Foster*, 17 Wall. 123, 142; *Hamilton* v. *Liverpool &c. Ins. Co.*, 136 U. S. 242, 255.

The duties of Gibbs, the plaintiff's predecessor, as defined in the letter to him from the secretary of the company of August 24, 1874, containing the terms of his appointment "as law agent in and concerning the preparation of mortgages for loans authorized by them in America," were to "do all work, and carry through all procedure, and see to the execution and registration and publication of deeds, requisite and necessary for giving and securing to the company valid and effectual first and preferable mortgages over real estate for such loans as the directors at Dundee may from time to time sanction and authorize," and to "be responsible to the company for the validity and sufficiency of all mortgages prepared or taken by" him. For the protection of borrowers, as well as of the company, he was prohibited from taking or receiving in behalf of the company any commission or bonus from borrowers beyond lawful interest on the money lent them; from acting on the one hand as a local director of the company, or being interested on the other in any property mortgaged, or proposed to be mortgaged; and his "professional fees against borrowers, including abstracts, searches, investigating titles, preparation and recording of mortgages," were limited by a scale prescribed. Although "certificates of title" were not specifically

mentioned, it is quite evident that his duties, as thus defined, included a report or certificate in some form to the company of the title of each parcel of land upon the mortgage of which it was to lend money. It is equally evident that he was to be paid nothing by the company, but was to find his whole compensation in the fees paid him by the borrowers and mortgagors.

It was admitted that the plaintiff took his appointment on the same terms as Gibbs had taken his, save only as it might be varied by the secretary's letter to the plaintiff of December 18, 1875, and by the directors' resolution and the printed rules enclosed in that letter.

The secretary's letter to the plaintiff informed him that he had been appointed "law agent for the company in Portland," referred to his previous experience of the duties of his position, and reminded him that he would be personally responsible to the directors and the company for its having a clear and indisputable first mortgage in each case, and for its business being conducted in accordance with the local laws. Among the plaintiff's duties, as defined by the printed rules sent him, were "to prepare all mortgages, deeds, notes, coupons and other documents in connection with the company's loans, and to be responsible for their due execution, publication, registration and validity;" and "to be responsible that all mortgages taken are a clear and indisputable first lien upon the subjects mortgaged, and to grant certificates to that effect." In this respect, these rules exactly accord with the prior directions to Gibbs, except in expressly mentioning (what was only implied in those directions) the duty to grant certificates of title.

The necessary conclusion is that, so far as the duty of investigating and certifying titles and preparing mortgages, and of being responsible to the company for the due execution and registration of the mortgages and for their validity as a first lien on the lands mortgaged — in other words, so far as his duties were substantially the same as those previously performed by Gibbs — he was to be compensated in the same manner, namely, by fees paid by borrowers; and this is clearly assumed in the plaintiff's subsequent letter of September 30,

1876, to a director of the company, and in the ensuing resolution of the company and letter of that director.

The compensation to be received by the plaintiff for such duties was not increased or affected by the fact that by the rules by which he was governed he was also made general attorney and counsellor of the company, and might, for his services as such, (in regard to which no question arises in this case,) be entitled to other compensation, as none had been specified in the contract between the parties.

*Judgment affirmed.*

In Nos. 307 and 308, between the same parties, and argued at the same time, the facts are similar, and the judgments are likewise

*Affirmed.*