## COLONIAL ICE CREAM CO. v. INTEROCEAN MERCANTILE CORPORATION.

(Circuit Court of Appeals, Third Circuit.   February 21, 1924.)

### No. 3031.

1. **Sales ☾81(1), 117—In merchants' contract, time of shipment held of essence; rescission may be had for delay in delivery.**

   In the contracts of merchants, time of shipment is of the essence; and where shipments are not made in accordance with the time provided in the contract, the aggrieved party may repudiate the whole contract.

2. **Sales ☾58—Under contract, relative bill of lading held conclusive proof of date of shipment.**

   A provision of a contract of sale that the relative bill of lading should constitute proof of the date of shipment meant conclusive proof, in the absence of fraud.

3. **Sales ☾177—Anticipatory breach renders presentation of delivery order unnecessary.**

   Where, prior to the arrival of sugar purchased, buyer notified seller "that it would not accept the sugar and would not pay for the same," *held*, that there was an anticipatory breach, rendering presentation of the delivery order as provided in contract unnecessary, and preventing buyer from relying on alleged insufficiency of the order.

4. **Sales ☾88—Construction of contract and delivery order held for court.**

   Where there was no dispute as to the facts, the construction of a contract of sale and a delivery order, to determine whether the order tendered would have entitled buyer to the sugar sold, *held* for the court, and not for the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Suit by the Interocean Mercantile Corporation against the Colonial Ice Cream Company. Judgment for plaintiff, entered on a directed verdict, and defendant brings error. Affirmed.

Henry A. Hoefler, of Philadelphia, Pa., for plaintiff in error.

Thomas Stokes and G. W. Pepper, both of Philadelphia, Pa. (Johnson & Galston, Murray, Prentice & Aldrich, and Henry, Pepper, Bodine & Stokes, all of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.   This suit was instituted by the Interocean Mercantile Corporation to recover the difference between the contract price and market price of about 200 tons of sugar sold by it to the plaintiff in error.   On May 21, 1920, the plaintiff below entered into a contract with the defendant for the sale of about 200 long tons of

☾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Java white sugar at 23¾ cents per pound. The sugar was to be shipped by steamer from Java between July 1 and October 31, inclusive, 1921, and the relative bill of lading was to constitute proof of the date of shipment. In lieu of cash in advance or letter of credit, the defendant, on the date of the contract, addressed a letter to the Equitable Trust Company, in which it agreed to make cash payment to it for the account of the plaintiff "against delivery order and provisional invoice as soon as the sugar shall have been cleared through the custom house." The sugar in question with considerable quantities of other sugar was shipped from Java on the steamer Honolulu Maru. There were five bills of lading, evidencing the shipments; one was dated August 28, 1920, another August 29, 1920, the third August 30, 1920, and two others August 31, 1920. The sugar arrived in New York on December 15, 1920, and "was landed ex dock and duty paid." At that time the price of sugar had fallen from 23¾ cents to 6¼ cents per pound. On December 22, 1920, the plaintiff tendered to the defendant a delivery order signed by Lunham & Moore (or Dunham & Moore, the record containing both), plaintiff's custom brokers, and indorsed in blank by plaintiffs, addressed to the delivery clerk of the steamer Honolulu Maru, directing him to deliver to the plaintiff the sugar therein described, and the provisional invoice for the sugar. The defendant refused to accept this tender of the sugar or to pay for it. The contract price of the entire sugar was $106,-367.70. The market price was $27,991.50, and the difference between them was $78,376.20. At the conclusion of the evidence submitted by both parties the learned trial judge directed a verdict for the plaintiff in the amount of their demand, with interest thereon from the date of the tender, making a total of $89,374.98. The defendant challenges the correctness of this action.

It contends that the relative bills of lading were inadmissible, because the testimony shows that the facts they contain, as to the date of shipment, are untrue, and in any event their truth or falsity should have been submitted to the jury. This contention is based upon the deposition of John Engchiaw, under whose supervision the bills of lading were prepared at Samarang, which was 175 miles from Sourabaya, the port at which the sugar was loaded on board the steamer. He was the general manager of the Osaka Shosen Kaisha, Limited, at Samarang, Java, hereinafter called the Osaka Company. N. V. Kwik Hoo Tong Handel Mij, hereinafter called the Kwik Company, was the agent and representative of the Osaka Company at Sourabaya. The Kwik Company telephoned Engchiaw that the Honolulu Maru was due to arrive at Sourabaya on August 28, 1920, and he began to make out the bills of lading that day. Four thousand tons of sugar were placed under the control of the Osaka Company at Sourabaya—1,000 tons on August 27, and 3,000 tons on August 28, 1920. It was in the "go-downs" of the shippers at that place.

[1] Engchiaw testified that he being at Samarang, 175 miles from Sourabaya, did not know, of his own knowledge, the date of the shipment of the sugar. But that fact does not establish that the date of the shipment contained in the bills of lading was incorrect. All that his testimony shows is that he did not of his independent knowledge

know the date. He relied on others for the information that the bills of lading contained. In the contracts of merchants, time is of the essence. The time of shipment enables merchants to fix the probable time of arrival and provide funds for payment and means for fulfilling contracts with third parties. Where shipments are not made in accordance with the time provided in the contract, the aggrieved party may repudiate the whole contract. This has been the rule of law both in England and the United States for many years. Bowes v. Shand, 2 App. Cas. 455; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366.

[2] For their mutual protection the parties provided in the contract that the relative bill of lading should constitute proof of the date of shipment. The defendant contends that "shipment" means "putting the goods on board of a vessel," while the plaintiff contends that it means "delivery of goods to a carrier for transportation, whether by land or water or both." Whichever it means, the contract provided that the relative bill of lading should constitute proof of that fact, and in the absence of fraud, which is neither alleged nor proved, this provision meant proof conclusive. Second National Bank of Hoboken v. Columbia Trust Co. et al. (C. C. A.) 288 Fed. 17. The dates of shipment contained in the bills of lading are all within the time specified in the contract. Admittedly this is the real question in the case, and we resolve it against the defendant.

The defendant contends that it was error to admit the delivery order, and, if admitted, the jury should have been allowed to pass upon whether or not the sugar would have been delivered upon the acceptance and presentation of that order to the carrier, and that 'the order, upon its face, was not sufficient to pass title to the sugar. Therefore the defendant was afraid, or, at least, did not wish, to pay for the sugar on insufficient documents and without further assurance that it would receive the sugar on payment of the purchase price. The contract provided that:

"In lieu of cash advance or letter of credit the buyer hereby undertakes to sign, under this date, letter addressed to the Equitable Trust Company, as drafted on back hereof, by which they agree to make cash payment to them for account of the Interocean Mercantile Corporation against delivery order and provisional invoice as soon as the sugar shall have been cleared through the custom house."

The letter was written in accordance with this provision of the contract. The only objection raised at the trial, or here, as to the delivery order, is that it is defective and insufficient, in that, on its face, it does not show that defendant would have received the sugar on presenting it to the carrier, because it is indorsed in blank, and not to defendant or bearer, fails to state the kind and quantity of sugar, and does not show who Lunham & Moore were. But the order does authorize the delivery of 2,008 bags of sugar, 136 pounds short of 200 tons, marked "I. M. C.," to the plaintiff, which indorsed it in blank and tendered delivery of it to defendant. The contract does not provide for any special form of order. The fact of the quantity and quality of the sugar was not once raised before or during the trial. The purpose of the parties in making the provision as to the delivery

order was to enable the defendant to receive the sugar on presenting it.

[3] There is no denial that the sugar, the required quantity and quality, remained on the dock from December 16, to December 22, 1921. Defendant full well knew that the sugar was there and would be delivered on the payment of the purchase price, which it has tried to avoid by raising technical and unsubstantial objections. In fact, it is admitted that, prior to the arrival of the sugar, plaintiff notified defendant that it was about to arrive so that arrangements could be made to pay for it. Defendant replied "that it would not accept the sugar and would not pay for the same." This anticipatory breach rendered the presentation of the delivery order unnecessary, and the defendant may not now hide behind the alleged insufficiency of the order. Hartley v. James, 50 N. Y. 38; Second National Bank of Hoboken v. Columbia Trust Co. (C. C. A.) 288 Fed. 17, 22; Zuck v. McClure, 98 Pa. 541; Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 589, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580.

It is urged that the learned trial judge erred in directing a verdict because the pleadings raised an issue of fact, the truth of which could only be determined by the jury. Defendant refers to the allegation in the statement of claim that the tender of the delivery order "entitled the bearers to receive 2,008 bags of said sugar shipped by said steamer Honolulu Maru." The defendant admitted the tender, "but denies that the said delivery order would have entitled the defendant to receive the sugar bought by it." In other words, the fact as alleged is admitted but its legal effect is denied.

[4] The construction of the contract and delivery order was for the court, and not the jury. Whether or not the possession and presentation of that order to the delivery clerk of the carrier would have entitled the defendant to receive the sugar depended, not upon collateral facts and circumstances, but upon the provisions of the contract and delivery order themselves. There was no dispute about the facts. The legal effect of those instruments was for the court, and not the jury. West v. Smith, 101 U. S. 263, 270, 25 L. Ed. 809; Hamilton v. Liverpool, London & Globe Insurance Co., 136 U. S. 242, 255, 10 Sup. Ct. 945, 34 L. Ed. 419; Hughes v. Dundee Mortgage Co., 140 U. S. 98, 104, 11 Sup. Ct. 727, 35 L. Ed. 354.

There was therefore no question to be submitted to the jury and the judgment is affirmed.