## RODE v. GONTERMAN.
### No. 4275.

Circuit Court of Appeals, Seventh Circuit.
June 4, 1930.

Rehearing Denied June 23, 1930.

Thomas Williamson, of Edwardsville, Ill., for appellant.

Orla M. Hill, of St. Louis, Mo., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

Plaintiff-appellee recovered judgment for $30,000 against defendant-appellant for the wrongful forfeiture of a written contract

dated May. 3, 1924, wherein the defendant sold to plaintiff acres in Madison county, Ill., for subdivision purposes.

Plaintiff's contract obligations were to pay: (1) $5,000 cash; (2) $1,000 on or before the 5th of each month for 70 months; (3) taxes subsequent to 1923; (4) interest semiannually; (5) tenants' damages; (6) for the platting of the subdivision; (7) insurance on houses, then on or thereafter erected on the premises; and also (8) to keep the premises free from mechanics' liens. Defendant's undertaking was that, if and when plaintiff had performed his covenants and agreements, defendant would: (a) Make a plat; (b) convey the property.

■ Although defendant pleaded over, after demurrer overruled, he urges, on authority of Marske v. Willard, 169 Ill. 276, 48 N. E. 290, that the demurrer should be considered here because the declaration stated a defective cause of action.

The cause of action attempted to be set out in the declaration, stated most favorably to plaintiff, is that plaintiff was required to, and did, spend large sums of money to render the property suitable for sale, and that because thereof plaintiff requested defendant to, and defendant did, waive the monthly and other payments until the sale of lots would permit plaintiff, without financial distress to himself, to pay said monthly installments, interest, taxes, etc.; that, while plaintiff was performing under that new agreement, defendant, in violation thereof, wrongfully gave notice of forfeiture and took possession of the premises. We think that is a defective averment of a good cause of action, and that demurrer was waived by pleading over.

There was no attempt and no evidence to prove the issue thus raised. Apparently by common consent, the case was tried on three issues not raised by the pleadings, namely: (1) Was defendant in default on his undertaking to make the plat; (2) was he in default on his contract to make deeds for the lots; (3) that defendant, by habitually accepting payments on dates other than those stipulated in the contract, waived the time essence clause and could not declare a forfeiture of the contract without first giving plaintiff reasonable, definite and specific notice that from and after a given date strict compliance with the contract provisions would be exacted.

The declaration averred:

"That on, to-wit, the 22nd day of April, 1925, pursuant to the terms of said agreement, the defendant caused a plat of said tract or parcel of land to be duly made * * * which said plat was on the day and date aforesaid duly filed of record. * * *"

In view of that averment, it is not clear why any question as to the plat should or could properly have been raised. But as no one called the attention of the court to the fact that they were trying a false issue, we would not give it further consideration, except for the fact that the court's instructions thereon to the jury require consideration.

■■ One of plaintiff's contentions was that defendant was in default because he had not earlier filed the plat for record. The court told the jury that there was no specific provision that required defendant to file the plat, but that there was the provision that:

" 'For each $300 of monthly payments made, it is agreed that the said party of the first part shall furnish a deed for any selected lot facing on the hard road or facing on Pontoon Avenue,' and * * * defendant Rode would have violated the laws of the State of Illinois if he had attempted to make a deed or conveyance to a lot * * * without having made a plat and filed it for record."

The court then read to the jury two sections from the Illinois statutes, one of which showed that to sell or offer for sale any lot, etc., without complying with the statute with reference to the filing of plats for record would be an offense against the statute; the other section read provided for prosecution of the offender by the state's attorney. The instruction then continued:

"So construing the paragraph with reference to the original agreement of Mr. Rode to plat the land sold and the agreement to convey all selected lots upon the payment of the certain monetary provisions contained in the contract, makes the conclusion irresistible that the intention of the parties, particularly Mr. Rode, was that he was to file the plat for record. And that, gentlemen of the jury, is one of the material things in this case. * * * A party to a contract cannot declare a forfeiture as long as he himself is in default and the default of the opposite party is made necessary or probable by reason of the other party's default."

The construction of the contract was for the court. The reading of the statutes could only tend to prejudice the jury. It could not aid in the solution of any question properly before the jury.

Was defendant in default on his obligation to deed selected lots? That was one of

the two things defendant was to do, if plaintiff himself was not in default. Plaintiff was always in default. We have not overlooked plaintiff's testimony that defendant accepted from him, as cash, $10,000 worth of securities, in addition to the money paid. Plaintiff's own testimony shows the securities were not assigned or indorsed; that they were not delivered to defendant; that all monthly payments were collected by plaintiff, and appropriated by him to his own use. On plaintiff's own testimony, it is clear the securities were not taken by defendant as cash, or at all.

In submitting to the jury, as a question of fact, the question as to whether there had been a waiver of the time essence clause, by habitually accepting the payments subsequent to their due date, the court told the jury:

"In this case it appears that all of the payments were made at a time other than the time specified in the contract. * * * The defendant in this case appears at no time, after accepting payments upon this contract, to have served upon the opposite party, Gonterman, certain, plain and specific notice of his changed intention to enforce the time essence clause of the contract. Therefore, as a matter of law, the forfeiture or the attempted forfeiture of June 5, 1925, was of no force and effect. It amounted to a breach of the contract on the part of Rode."

The only objection made to that instruction was corrected by the court, and no further exception was reserved. The court then told the jury:

"Where a contract for the sale of real estate is breached by one of the parties, the other and the injured party has three remedies, the first two of which I will not mention because you are not concerned with them here. The third remedy you are concerned with, and that is that he has the right to treat the repudiation as putting an end to the contract for the purpose of performance, and sue for the profits he would have realized if the contract had been completed."

That is, in part, the substance of the language in L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59, 80, 38 N. E. 773, 30 L. R. A. 33. The instruction proceeded:

"Gentlemen of the jury, if you find from a consideration of all the evidence in this case that a preponderance of the evidence establishes the fact that the payment by Gonterman upon the particular days specified in

the contract was waived, and that the defendant Rode hindered and delayed the plaintiff Gonterman in carrying out the scheme of selling lots, as contemplated by this contract, and that without authority on the 5th day of June, 1925, he repudiated the contract—that is, the defendant, Rode—by treating it as a nullity under a claim of forfeiture, that then Gonterman, the plaintiff, was entitled to and had the right to treat the contract as repudiated and to sue for the profits which he might have enjoyed had the contract been completed. In the light of that fact, if you so find, the measure of damages of the plaintiff would be what profits he has lost by reason of the alleged forfeiture of June 5, 1925, as shown by the evidence, if any."

In Chicago Washed Coal Co. v. Whitsett, 278 Ill. 623, 627, 116 N. E. 115, 116, the court said:

"If it elected to keep the contract alive and in force for the purpose of recovering damages for future profits, it must do so for the benefit of both parties, and must both allege and prove performance of the contract upon its part, or a legal excuse for its nonperformance, before there could be a recovery on the contract."

In Hamilton Co. v. Channell Chemical Co., 327 Ill. 362, 364, 158 N. E. 678, 679, the court, further elucidating the rule as to the right to recover profits, said:

"In these cases the declaration must be framed specially on the contract for not accepting the goods or for refusing to complete the bargain. 1 Chitty's Pl. (14th Am. from 6th Lond. Ed.) *347. There can be no recovery on a declaration for not accepting goods where the proof shows that the goods were not manufactured or tendered to the buyer. In such a case the seller must set up a legal excuse for his non-performance and show a refusal on the part of the buyer to complete the contract. It is a primary and elementary principle that a plaintiff can recover only on the case made in his declaration."

The averment in the declaration that there was a definite agreement to waive the payments at the time specified in the contract, and the further averment that, in violation of that agreement, defendant forfeited the contract and took possession of the property, present the only issue in the pleadings.

There is no averment as to damages, except the following:

"And the plaintiff further alleges that he claims damages for the loss of great gains

**4**

and profits which he would have received and made, except for such wrongful forfeiture and breach of said contract by defendant, as aforesaid; that is to say, that he had the means and ability to perform, and was performing, all of the terms and conditions of said contract, other than those waived as aforesaid by defendant, at a great profit to plaintiff."

Except to bring suit, plaintiff, after service of the notice of forfeiture, did nothing. He was then in default for two of the monthly payments, and also the 1924 taxes and the first semiannual interest, but he made no attempt to make any of those payments, and the evidence conclusively shows that he had neither the means nor the ability to perform the contract.

Neither the allegations of the declaration, nor the proofs, justified the giving of the instructions as to the measure of damages.

The judgment should be, and is, reversed.