## S. H. KRESS & CO. v. FISHER et al.
### No. 3444.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

D. W. Robinson, Jr., of Columbia, S. C., and J. Hertz Brown, of Spartanburg, S. C. (Carlisle, Brown & Carlisle, of Spartanburg, S. C., and Robinson & Robinson, of Columbia, S. C., on the brief) for appellant.

Irvine F. Belser, of Columbia, S. C. (Melton & Belser, of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment, in a suit at law, in the District Court of the United States for the Eastern District of South Carolina, at Columbia. Appellees, who were plaintiffs below, and who will herein be referred to as plaintiffs, brought the suit in the court of common pleas for Richland county, S. C., against the appellant company (herein referred to as defendant) in July, 1931. On petition of the defendant the case was removed to the United States court. After removal, the complaint was amended and answer was filed by the defendant. A trial was had in July, 1932, and the jury returned a verdict in favor of the plaintiffs in the amount of $4,200, on which verdict the court below entered judgment, from which action the defendant brought this appeal. The only question raised by the assignments of error is the correctness of the action of the trial judge in refusing to direct a verdict for the defendant.

In the year 1930, negotiations were begun between the plaintiffs and the defendant looking to the leasing of certain business property located in Columbia, S. C., by the plaintiffs to the defendant. These negotia-

tions extended over a considerable period of time running from June to October, 1930, inclusive, and on October 22, agent representing the defendant gave notice that the defendant would not lease and that all negotiations were canceled. Practically all the negotiations were conducted by correspondence, and there is no dispute as to the facts.

Two main points are to be considered in arriving at a proper determination of the case: (1) Was there at any time a binding contract between the parties? (2) Was such contract canceled or repudiated by the plaintiffs?

█ It is well settled that, when there is no dispute as to the facts, and the evidence relied upon is in writing, in the absence of ambiguity, the meaning and legal effect of the writings is a question of law for the court and not one of fact for the jury. Leaphart v. Bank, 45 S. C. 563, 23 S. E. 939, 33 L. R. A. 700, 55 Am. St. Rep. 800; Crawford v. Oman & Stewart Co., 34 S. C. 90, 12 S. E. 929, 12 L. R. A. 375; Norfolk Motor Exch. v. Grubb, 152 Va. 471, 147 S. E. 214, 63 A. L. R. 310; Rode v. Gonterman (C. C. A.) 41 F.(2d) 1; Companhia De Navegacao Lloyd Brasileiro v. Blake Co. (C. C. A.) 34 F.(2d) 616; Monagas v. Fox Film Corp. (C. C. A.) 46 F.(2d) 877; Keystone Steel & Wire Co. v. Pierce Oil Corporation (C. C. A.) 17 F. (2d) 476; Hamilton v. Liverpool & L. & G. Insurance Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419; Kutztown Foundry & M. Co. v. Sloss-Sheffield S. & I. Co. (C. C. A.) 279 F. 627.

"The scope and effect of the contract in question depended wholly upon written correspondence, and in no degree upon extrinsic circumstances, and were, therefore, to be determined by the court." Hughes v. Dundee Mortgage & Trust Investment Co., 140 U. S. 104, 11 S. Ct. 727, 729, 35 L. Ed. 354.

It is true that the rule in South Carolina is that, where there is ambiguity, the proper interpretation becomes a question of fact to be submitted to the jury. Wheeler v. Globe Ins. Co., 125 S. C. 320, 118 S. E. 609; Breedin v. Smith, 126 S. C. 347, 120 S. E. 64; Sirrine v. C. E. Graham Trust Fund, 136 S. C. 448, 134 S. E. 415; Peoples v. South Carolina Power Co. et al., 166 S. C. 150, 164 S. E. 605.

Here in our opinion there is no such ambiguity as would require submission to the jury, even under the South Carolina decisions, and the court should have interpreted the written evidence as a matter of law.

Early in the negotiations it was agreed and understood between the parties that neither party was to be bound by the negotiations until the lease had been finally agreed upon and signed. That this was well understood by attorneys representing plaintiffs cannot be questioned. On July 19, 1930, the defendant company wrote its agent Glenn a letter which contained the following clause: "It is of course, to be fully understood that we are not in any way bound or obligated unless and until the lease is executed and delivered by us."

This letter was submitted to attorneys in charge of the negotiations for the plaintiffs, and in a letter to Glenn, on July 22, 1930, the attorneys noted this condition with regard to the negotiations made by the defendant, and said: "We, of course, understand that neither party is bound by the proposed lease until the same has been finally agreed upon and signed."

It is not contended on behalf of the plaintiffs that this condition was ever complied with, as no lease was ever executed or delivered by the defendant; but the position is taken that the negotiations were broken off early in August and afterwards resumed, and that this condition did not attach to the ensuing negotiations. We cannot agree with this interpretation of the evidence. The negotiations were never completely broken off until the final break in October. They were temporarily suspended in August, but were resumed in a few days, and there was nothing in the dealings of the parties to indicate an abandonment of the condition, clearly agreed to in the beginning, that neither party was to be bound until the lease had "been finally agreed upon and signed."

█ We are of the opinion that the correspondence shows that there never was any meeting of the minds of the parties as to the terms of the lease. On August 28, 1930, attorneys for plaintiffs wrote Glenn, agent for the defendant, a letter which contained the following: "It seems to us that the 15th of September should allow ample time for completing the necessary details and, therefore, we are handing you the lease for the purposes aforesaid upon the understanding and condition that if the transaction is not completed by that time the landlords may withdraw and require the return of the lease and take such steps as they may think proper."

This letter clearly shows that it was at that time understood that the lease was not agreed upon and the transaction not then

completed. Again on September 30, 1930, the same attorneys sent Glenn the following telegram:

"Columbia, S. C., Sept. 30, 1930.
"Mr. W. S. Glenn, Spartanburg, S. C.
"Our clients insist that Kress close lease and take over property as of October first. Wire answer to reach us by four this afternoon.

"Melton & Belser."

Again on October 3, 1930, another telegram was sent as follows:

"October 3, 1930.
"Mr. W. S. Glenn, Spartanburg, S. C.
"Please advise what Kress proposes to do. Answer.

"Melton & Belser."

On September 19, 1930, these attorneys wrote attorneys for the defendant a letter which closed as follows: " * * * We trust that the proceeding will meet with your approval and that the transaction can now be closed."

It is contended on behalf of plaintiffs that the lease was definitely agreed upon in a letter of September 5, 1930, written by defendant in response to the letter of August 28, 1930, from representatives of the plaintiffs, but this letter of September 5 shows beyond any doubt that the details of the lease were not agreed to by the defendant, and that the date of the beginning of the lease, the question of time when possession should be given by tenants then occupying the property, the examination of the title, certain litigation with regard to the interest of minor children, and negotiations with regard to a party wall agreement were all left open for adjustment. Certainly there was at that time no meeting of the minds of the parties as to the contract of lease.

On October 18, 1930, one of the plaintiffs, who, it was admitted, also acted for the other plaintiff, wrote the following letter to the agent of the defendant:

"Saluda, N. C., Oct. 18, 1930.

"Dear Mr. Glenn: I gave Kress until the 15th to get things settled, and it is unreasonable to give any more time. Surely if they are going to take the store, they can take it now. Mrs. Dana has a splendid offer for her store, and she cannot afford to dawdle any more, so I am ready now to take a stand. I am writing you before I do anything as I think I should, and if I were the loser I might still try to be patient, but I feel I have been unfair to her to allow her to lose so much rent and I am going to try to make it up to her in some way. Now here's where I stand. I am going to say take it or leave it and I mean it; They have the idea that we will continue to wait until they choose to act. They are mistaken. I can't be responsible for other people being held up any longer, and I am ready to call a halt. I am not upset, but I feel it is right now to demand a show down. People in Columbia have gotten hold of so much that has transpired and are prejudiced against Kress, terribly so. The public feel and not through me that they have been terribly unfair. I suppose however if some one else wanted to rent to them they would waive their prejudice. That's where I would come in and tell them a few things, for they have not been fair or reasonable.

"I do not hold you in any way responsible for Kress and would not act now, but feel that you can do no more. We will both lose; but I can't see where waiting will help us. You can phone or write if you have any suggestion, but I must do something on Monday.

"Mary S. Fisher."

This letter shows beyond any question that the plaintiffs did not consider the matter as finally agreed upon. Its whole tenor shows an effort to make the defendant company act, and also shows a thorough understanding to the effect that the defendant had not at that time definitely acted. In reply to this letter the defendant called off all negotiations with regard to the lease.

The defendant entered into the negotiations with the express understanding that it was to be in no way bound until the lease was executed and delivered. This condition was agreed to by plaintiffs' attorneys. There was never any such execution or delivery, nor was there ever any agreement between the parties as to the details of the lease. At the time the negotiations were broken off, the party wall adjustment had not been completed. There never was at any time a binding contract between the parties.

In view of our conclusion on this point, the consideration of the question whether a contract entered into was repudiated by Mrs. Fisher's letter of October 18, above quoted, is not vital to our decision. However, this letter certainly gave the defendant the option to cancel the contract had one been entered into. The notice given in the letter to "take it or leave it" could mean nothing else. The defendant promptly "left it," and broke off all negotiations.

From the evidence, as shown in the record, the judge below should have directed a verdict for the defendant, and the judgment is accordingly reversed.