## ARCADIA MILLS v. BANKERS' TRUST CO.
### No. 3514.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

C. E. Daniel and L. W. Perrin, both of Spartanburg, S. C. (Perrin & Tinsley and Lyles & Daniel, all of Spartanburg, S. C., on the brief), for appellant.

David Paine, of New York City (White & Case, of New York City, and Wilton H. Earle, B. F. Martin, and Price & Poag, all of Greenville, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action at law brought in September, 1931, in the District Court of the United States for the Western District of South Carolina by the appellee, Bankers' Trust Company, a New York banking corporation, herein referred to as the bank, against appellant, Arcadia Mills, a South Carolina textile corporation, herein referred to as the mills, on the latter's five promissory notes, payable to the bank, aggregating $220,000. The mills filed an answer admitting the execution of the notes but setting up an affirmative defense, claiming that the bank had agreed to extend the time for the payment of said notes for one and two years from August 1, 1931, in consideration of mortgage security to be given by the mills, and that the mortgage security to be given by the mills had been tendered in ac-

cordance with the agreement. The answer set up the extension agreement in bar, and counterclaimed for damages for its breach.

The bank filed a reply denying that there was any meeting of minds upon the alleged agreement of extension and alleging that the bond issue proposed by the mills and tendered to the bank as security was void under the Constitution and statutes of the state of South Carolina; that the said bond issue, if not void, was of such doubtful validity as to seriously affect the value of the bonds, and therefore could not be accepted by the bank; that the consent of 100 per cent. of the preferred stockholders of the mills was necessary to make a valid mortgage; that such unanimous consent was not obtained, that it had been stipulated in the negotiations that such unanimous consent of the preferred stockholders would be obtained; and that the alleged extension agreement as claimed by the mills was within the statute of frauds, and, not being in writing, was void.

Upon the trial of the case, evidence was offered on behalf of the mills in support of its affirmative defense and counterclaim for damages and, upon the conclusion of the evidence offered by the mills, a motion was made on behalf of the bank for a directed verdict on the grounds that there had been no final agreement as to the extension; that the extension agreement as set up by the mills was void for the want of mutuality; that 100 per cent. of preferred stockholders had not consented to the mortgage; that the existing debt was not a valid consideration for the bonds proposed to be issued; and that the alleged oral agreement came within the statute of frauds.

The court held that, apart from the oral testimony, there was not sufficient testimony to show that the minds of the parties ever met on any definite agreement to extend credit as claimed by the mills; that there was no mutuality in the contract, as the mills was not obligated under the alleged agreement to get the money from the bank, and could have gotten it elsewhere; and that the alleged agreement was clearly within the statute of frauds under the decision in Union Car Advertising Co. v. Boston Elevated Ry. Co. (C. C. A.) 26 F.(2d) 755, 58 A. L. R. 1067. The court also held that the consent of 100 per cent. of the preferred stockholders was not necessary to make the bonds valid, but the consent of the 89 per cent. that was secured was sufficient, and that the existing debt was a sufficient legal con-

sideration for the corporate bonds of the mills that were to be issued.

Under these holdings, the trial judge directed a verdict for the plaintiff, the bank, to which action the appellant excepted. Under the direction of the court, the jury brought in a verdict for the plaintiff for $237,048.17, upon which judgment was entered, and the appellant brought this appeal.

The evidence shows that for a number of years, prior to the year 1929, the mills carried on a successful manufacturing business, making large profits; that, in the year 1929, the mills opened an account with the bank and borrowed large sums of money from it; that, in the spring of 1931, the mills owed $250,000 to the bank and $175,000 to the South Carolina National Bank, and at that time the bank began working to get a reduction of its debt and security for it. In June, 1931, one Patton, vice president of the South Carolina National Bank, in charge of its Greenville branch, and one Blackford had a conference with officials of the Bank in New York looking to the securing of some extension as to the time of payment of the bank's debt, and it was at that time that the extension agreement set up by the mills as an affirmative defense was claimed to have been entered into. There had been previous negotiations between the representatives of the mills and the bank as to the bank's debt, but with no definite conclusion.

█ Patton and Blackford were introduced as witnesses on behalf of the mills, and they both testified that at the time that the alleged agreement was entered into it was understood that the bank was to finally approve the details as to the giving of the security before the agreement for extension should become final, and their testimony in this respect is fully corroborated by the voluminous correspondence subsequently carried on between the bank and the mills, the South Carolina National Bank, and the attorneys for the respective parties. That this was necessarily the case must be presumed in all reason. The proposition that the bank would agree to the extension desired for the time involved without reserving the right to finally pass upon the details of the mortgage given to secure the debt is not a reasonable one. The amount of money involved is so great that it is impossible to conceive that the bank could have done otherwise than reserve the right to finally pass upon the details with regard to the security offered for its debt. The oral evidence that was excluded by the judge in the view he took of the case, and the written correspondence, all conclusively support the contention of the bank that it never finally agreed as to material details of the extension agreement. It was understood from the beginning that the bank must approve the mortgage, when finally submitted as security, before the extension should become effective, and it is clear from all the evidence in the case that this the bank never did. The consent of only 89 per cent. of the preferred stockholders to the issuance of the mortgage and bonds was secured, and there was a substantial doubt whether under the South Carolina statute a pre-existing debt was a valid basis for the issuance of the bonds in question. It would seem that the bank was entirely justified in its refusal to approval the security offered, but, whether this was true or not, the bank had unquestionably reserved the right of final approval—which was never given. The bank promptly notified the mills that the security offered was not satisfactory, and demanded payment of the notes. In doing this the bank was acting within its rights.

█ It is not necessary to cite authority to the effect that, in order to constitute a valid agreement, there must have been a meeting of the minds on all material details. The principle which in our opinion controls on this point was fully discussed by this court in the case of Kress & Co. v. Fisher et al., 65 F.(2d) 682, where we said that, in view of the fact that certain material details of the agreement had never been agreed on, there was no binding contract between the parties.

Here, even to a greater extent than in the Kress Case, there were material matters never agreed upon. There was never any agreement as to whether the proposed mortgage should cover after-acquired property; there was no agreement to accept bonds instead of notes; there was no agreement as to the net quick assets to be maintained by the mills, or as to the audit requirement, or as to the handling of the bonds under the mortgage; and there were many other details never agreed upon which any sound banking concern must necessarily, in due course of business, have reserved the right to pass upon. In view of our conclusion that there never was any valid extension agreement entered into between the parties, it is not necessary to pass upon the validity of the proposed bond issue, the lack of mutuality in the alleged agreement, the question whether the alleged

agreement was within the statute of frauds, or any other question raised at the trial.

The action of the court below in directing a verdict for the bank was proper, and the judgment is accordingly affirmed.